**STIFEL FINANCIAL CORPORATION,**
Defendant Below, Appellant–Cross
Appellee,

v.

Robert M. COCHRAN, Plaintiff Below,
Appellee–Cross Appellant.

Nos. 548, 2001, 549, 2001.

Supreme Court of Delaware.

Submitted: April 17, 2002.
Decided: June 13, 2002.

Edward P. Welch, Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmington, Delaware, Dennis M. Kelleher, (argued), Kara E. Fay, Skadden, Arps, Slate, Meagher & Flom, LLP, Boston, Massachusetts, for appellant-cross appellee, Stifel Financial Corporation.

Thomas P. McGonigle, Duane Morris, LLP, Wilmington, Delaware, Matthew A. Taylor, (argued), Duane Morris, LLP, Philadelphia, Pennsylvania, Robert J. Valihura, Jr., Robert J. Valihura, Jr., P.A., Wilmington, Delaware, for appellee-cross appellant, Robert M. Cochran.

BEFORE: WALSH, HOLLAND, and STEELE, Justices.

WALSH, J.

In this appeal from the Court of Chancery, we once again address the scope of officer/director indemnification under Delaware law. The Court of Chancery ruled that the claim of a former corporate officer, who was also a director, for indemnification was not time barred and extended to the cost and expense of defending himself in criminal proceedings, but that the officer was not entitled to be indemnified for the bulk of the expense of an arbitration action resulting from the termination of his employment. The corporation appeals from the allowance of any indemnification while the officer/director cross-appeals from the Court of Chancery's refusal to award him the expense of bringing the indemnification action.

Upon review of the record, we conclude that the Court of Chancery correctly granted summary judgment in favor of the officer with respect to the statute of limitations defense. We further conclude that the trial court properly determined the scope of indemnification in the criminal proceeding and the arbitration matter. We disagree with the Court of Chancery's denial of "fees on fees" and accordingly reverse as to that portion of the cross-appeal.

I

Robert Cochran ("Cochran"), the plaintiff in the proceeding in the Court of Chancery, had been an officer and director of Stifel, Nicolaus & Co., a wholly owned subsidiary of Stifel Financial Corporation ("Stifel").[1] Stifel is a mid-west regional investment banking carrier. Cochran, an investment banker, was in charge of Stifel Nicolaus' municipal bond underwriting department. In 1993, apparently prompted by a newspaper article, the Securities Exchange Commission ("SEC") began an investigation of Stifel Nicolaus' underwriting department to probe charges that Stifel Nicolaus had engaged in undue political influence and garnered improper fees in connection with certain municipal bond issues. The SEC investigation eventually centered on Cochran and resulted in the filing of a civil action against him alleging

---

1. In a prior appeal, we ruled that a director, like Cochran, could seek indemnification from the parent corporation of his employer, if he served as a director of a wholly owned subsidiary at the request of the parent. *Von-Feldt v. Stifel Financial Corp.*, 714 A.2d 79 (Del.1998).

violations of federal securities laws.[2] In the midst of this investigation, Stifel Nicolaus terminated Cochran for cause on August 23, 1994.

Following his termination, Cochran refused to repay excess compensation and the balance of a promissory note, as required by his employment agreement. To recover these amounts, Stifel Nicolaus commenced an arbitration action against Cochran. In the arbitration action, Stifel Nicolaus alleged that Cochran breached the express terms of his employment agreement by (1) refusing to repay excess compensation (the "Compensation Claim"); (2) failing to repay the amount of a promissory note that became due upon his termination for cause (the "Promissory Note Claim"); (3) breaching his fiduciary duties (the "Breach of Duty Claim"); and (4) violating the non-compete provision of his employment agreement (the "Non–Compete Claim"). Stifel Nicolaus withdrew the Non–Compete Claim at the arbitration hearing. The arbitrators ruled in favor of Stifel Nicolaus on the Compensation Claim and the Promissory Note Claim, and ordered Cochran to repay approximately $1.2 million. The arbitrators ruled in favor of Cochran on the Breach of Duty Claim, however. The arbitration award was confirmed by the United States District Court for the Eastern District of Missouri.

At the same time as the arbitration action, Cochran had been indicted by the U.S. Attorney in Oklahoma City on several counts of fraud in connection with the municipal bond dealings. Cochran was tried and convicted of these charges. Fortunately for Cochran, who faced an 87 month prison term, that conviction was reversed on appeal to the 10th Circuit, who held that Cochran had not violated any law.

Section 6.4 of Stifel's bylaws contains an indemnification provision, which provides:

> The Corporation [Stifel Financial] shall indemnify to the full extent authorized by law any person made or threatened to be made a party to any action, suit, or proceeding, whether criminal, civil, administrative or investigative, by reason of the fact that he … is or was a director, officer or employee of the Corporation or any predecessor of the Corporation or serves or served any other enterprise as a director, officer or employee at the request of the Corporation or any predecessor of the Corporation.

Pursuant to this bylaw, Cochran filed the present action on August 4, 1999, seeking indemnification from Stifel for (1) the $1.2 million arbitration judgment; (2) all fees, costs, and expenses incurred in connection with the arbitration action, the criminal proceeding, and the SEC investigation; and (3) all fees, costs, and expenses incurred in bringing the indemnification action.

## II

■ Procedurally, the Court of Chancery resolved the contentions before it through denial of Stifel's motion to dismiss and a later grant of partial summary judgment in favor of Stifel. This appeal arises primarily from the Court of Chancery's disposition of Stifel's motion to dismiss. A motion to dismiss a complaint presents the trial court with a question of law and is subject to *de novo* review by this Court on appeal. *Malone v. Brincat,* 722 A.2d 5, 9 (Del.1998). Moreover, this case presents questions of statutory interpretation, also warranting *de novo* review. *Moore v. Wil-*

---

**2.** At the time of briefing, this action was still pending, but Cochran has agreed to dismiss his claims for indemnification of the SEC investigation.

*mington Housing Authority,* 619 A.2d 1166, 1167 (Del.1993).

Stifel contends that Cochran's indemnification claims are barred by 10 *Del.C.* § 8111's one year statute of limitations. It is undisputed that Cochran's claims would be untimely if the one year limitation period were applicable. The Court of Chancery, however, determined that Cochran's claims were governed by the three year limitation contained in 10 *Del.C.* § 8106. Because Cochran's claims were clearly brought within three years, the trial court denied Stifel's motion to dismiss Cochran's complaint as untimely. We agree that the three year limitation period prescribed in 10 *Del.C.* § 8106 applies to Cochran's indemnification claims.

The one year limitation period contained in 10 *Del.C.* § 8111 is applicable to claims for "wages, salary, or overtime for work, labor or personal services performed." By contrast, § 8106's three year limitation applies to actions "based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations," "based on a promise," and "based on a statute." The question posed is whether Cochran's indemnification claims are properly characterized as employment claims or contract/statutory claims.

In *Sorensen v. Overland Corp.,* the United States District Court for Delaware held that a corporation's agreement to indemnify its director for litigation expenses is a benefit conferred for officer or director service rendering an indemnification claim subject to Delaware's one year period of limitation, pursuant to 10 *Del.C.* § 8110. *Sorensen,* 142 F.Supp. 354, 361 (D.Del.1956), *aff'd,* 242 F.2d 70 (3d Cir. 1957). The District Court explained that "[t]he word 'benefits' is embracing and covers all advantages growing out of the employment," including indemnification.

*Id.* at 360. Federal decisions interpreting Delaware statutory law are, of course, not binding on this Court or the Court of Chancery. *City Investing Co. Liquidating Trust v. Continental Cas. Co.,* 624 A.2d 1191, 1196 (Del.1993).

Stifel maintains, however, that this Court approved the *Sorensen* holding in *Goldman v. Braunstein's, Inc.,* 240 A.2d 577 (Del.1968). We do not so read *Goldman. Goldman* held that an action seeking damages based on wrongful termination of an employment contract was governed by the three year statute of limitations covering actions based on a promise. *Id.* at 578. *Goldman* reconciled §§ 8106 and 8110 (the predecessor to § 8111) by distinguishing between claims arising out of services already performed (subject to 8111), and claims arising upon or after termination of the employer-employee relationship (subject to 8106). *Id.* While not approving *Sorensen,* the Court in *Goldman* did note that its decision was not inconsistent with *Sorensen's* determination that § 8111 was intended to bar all claims arising out of the employer-employee relationship, because "a claim arising out of that relationship would necessarily be one referable to the period during which the relationship existed, not after its termination." *Id., distinguishing Sorensen,* 142 F.Supp. 354. *See also Compass v. American Mirrex Corp.,* 72 F.Supp.2d 462 (D.Del.1999) (holding that if plaintiff alleges a breach of a duty to provide benefits for work already performed, then § 8111 applies, but if plaintiff alleges employer breached a different duty arising out of employment agreement, then § 8106 applies).

Even at the federal level there is some doubt as to *Sorensen's* viability. *Rich v. Zeneca, Inc.,* 845 F.Supp. 162 (D.Del.1994). In *Rich,* the District Court held that Delaware's general three year statute of limita-

tions, rather than the one year statute of limitations for wage claims, applied to a suit brought by a former employee under ERISA alleging wrongful discharge for the purpose of interfering with the employee's attainment of rights under his ERISA plan. *Id.* at 166. After reviewing *Goldman* and its progeny, the District Court said "[t]hese cases suggest that 10 *Del.C.* § 8111 ... should not be read as being so comprehensive as to bar all claims arising out of the employer-employee relationship. Rather 10 *Del.C.* § 8111 is directed to claims alleging a breach of a duty to pay wages, salary or overtime for work performed." *Id.*

■ More to the point, the Court of Chancery has held that, because indemnification is essentially a contractual right, the three year statute of limitations is applicable to indemnification claims. *Scharf v. Edgcomb Corp.*, 1997 WL 762656, *5 (Del. Ch.1997), *appeal denied*, 705 A.2d 243 (Del.1998). We agree with the reasoning of the Court of Chancery and hold that, because indemnification is a right conferred by contract, under statutory auspice, actions seeking indemnification are subject to the three year limitations period that encompasses both actions "based on a promise" and those "based on a statute." 10 *Del.C.* § 8106. In sum, *Sorensen*, to the extent it is still viable, was never binding state-law precedent and our decision here leaves the *Goldman* dichotomy intact for all claims seeking wages, salary, overtime, or other true "benefits" arising from the employment relationship. Our analysis is strengthened by the general rule that, if there is doubt as to which of two statutes of limitations applies, that doubt should be resolved in favor of the longer period. *Sonne v. Sacks*, 314 A.2d 194, 196 (Del.1973).

III

■ Stifel also contends that Cochran's claim for indemnification of the arbitration action judgment should have been dismissed pursuant to § 145(b) because the arbitration action was brought "by or in the right of the corporation." Cochran replies that the trial court correctly concluded that § 145(a) rather than § 145(b) applied to the arbitration action because it was not brought "by or in the right of" Stifel, the corporation from whom indemnification was sought. This issue is moot, however, because the Court of Chancery granted summary judgment in Stifel's favor as to the arbitration action judgment on other grounds. Although Cochran appeals that summary judgment decision, as will be explained later, we affirm the Court of Chancery's decision granting Stifel summary judgment. This Court will not decide an issue that has become moot, unless the question posed is of public importance and its resolution will have a continuing and significant impact on the development of the law. *McDermott Inc. v. Lewis*, 531 A.2d 206, 211 (Del.1987); *Morris v. State*, 746 A.2d 277 (Del.2000).

IV

■ Stifel asserts that Cochran's indemnification claims should have been dismissed for his failure to make a demand on the board prior to filing suit. Cochran responds that neither the Indemnification Bylaw nor § 145(d) requires such a prior demand. The Court of Chancery held that, though Stifel's argument was persuasive from a policy standpoint, there is no language in § 145 that imposes a pre-suit demand requirement. On the contrary, the court noted, § 145(k) vests exclusive jurisdiction in the Court of Chancery "to hear and determine all actions for ... indemnification brought under this section or under any bylaw...." This authority is

not dependant upon a pre-suit demand, as in 8 *Del.C.* § 220.

Stifel bases its argument on 8 *Del.C.* § 145(d), which provides that a corporation may not offer indemnification without first making a determination that indemnification is proper under the circumstances and that the prospective indemnitee has met the applicable standard of conduct set forth in §§ 145(a) and (b). Section 145(d) then describes the procedures a corporation must apply in reviewing a demand for indemnification. For this detailed procedure to be pursued, Stifel argues, the corporation must be advised of the indemnification request before any suit is brought.

Specifically, § 145(d) provides that "[a]ny indemnification under subsections (a) and (b) of this section (unless ordered by a court) shall be made by the corporation only as authorized in the specific case...." Although Stifel argues that "unless ordered by a court" should not be read to "swallow" the rest of the subsection, this language clearly allows for the possibility that the Court of Chancery will order indemnification, thus negating the responsibility of the corporation to determine the propriety of the request in the first instance. Further, when read in conjunction with § 145(k)'s grant of plenary authority, the meaning is even more clear.

■ Stifel's policy arguments, based on respecting the authority of the board, are not persuasive. The General Assembly has spoken on the issue and, in the absence of a specific legislative restriction, we cannot engraft a requirement that creates a further bar to a statutorily created remedy. Any attempt to read into the clear language of a statute will be rejected. *See HMG/Courtland Properties, Inc. v. Gray,* 729 A.2d 300, 306 (Del.Ch.1999) (stating "[t]his court should be chary about reading words into a statute that the General Assembly could have easily added it-

self"). Finally, we note that Stifel was free to write a demand requirement into its bylaws, but did not.

## V

■ In his cross-appeal, Cochran argues that the Court of Chancery erred in dismissing his claim for indemnification of the expenses he incurred in bringing the indemnification suit. Cochran contends that, because the Indemnification Bylaw permits indemnification to the "fullest extent permitted by law" and there is no express prohibition in the law against indemnification of expenses incurred in prosecuting the indemnification suit, he is entitled to pursue this claim. Stifel counters that indemnification of "fees on fees" is not clearly provided for by § 145, and is thus not available under Delaware law.

The Court of Chancery determined that Cochran could not press this claim because neither Stifel's bylaws nor § 145 provide for "fees on fees," citing *VonFeldt v. Stifel Financial Corp.,* 1997 WL 525878, *2 (Del. Ch.1997) and *Mayer v. Executive Telecard, Ltd.,* 705 A.2d 220, 225 (Del.Ch.1997). In *Mayer,* the Court of Chancery held that neither § 145 nor the corporation's bylaw mandating indemnification to the fullest extent permitted by law allowed recovery of fees incurred in enforcing indemnification rights. *Mayer,* 705 A.2d at 221–24; *but see* Model Bus. Corp. Act Ann. § 8.54(b) (granting courts discretion to determine whether to also award "reasonable expenses to obtain court-ordered indemnification").

Although this Court has not passed on the availability of "fees on fees" in the context of indemnification suits, we have held, in a claim for workers' compensation, that it is appropriate to award attorneys' fees for time spent on a fee application pursuant to 19 *Del.C.* §§ 2127(a), 2350(f).

*Digiacomo v. Board of Public Educ. in Wilmington*, 507 A.2d 542, 547 (Del.1986). The reasoning of *Digiacomo* is equally applicable here. Both the workers' compensation and the indemnification statutes are intended to be remedial in nature. An attorney representing a former director who is being denied statutorily authorized indemnification must seek compensation from his client or remain uncompensated, a result "inimical to the interests" of the former director and contrary to the express purpose of § 145 to protect directors from personal liability for corporate expenses. *Id*; *see also Bagby v. Beal*, 606 F.2d 411, 415–16 (3d. Cir.1979) (holding that in statutory fee award cases, plaintiff's attorneys are entitled to compensation for time spent preparing the fee petition and successfully appealing the fee award).

Section 145(a) defines the circumstances under which a Delaware corporation is permitted to indemnify its officers or directors. As even the *Mayer* court conceded, the language of § 145(a) permitting indemnification to a party "in any action" can be read literally to encompass the indemnification action itself. *Mayer*, 705 A.2d at 224. This Court has emphasized that the indemnification statute should be broadly interpreted to further the goals it was enacted to achieve. *See generally*, *Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 344 (Del.1983); *VonFeldt v. Stifel Financial Corp.*, 714 A.2d 79, 84 (Del.1998). The invariant policy of Delaware legislation on indemnification is to "promote the desirable end that corporate officials will resist what they consider unjustified suits and claims, secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated." Folk, on Delaware General Corporation Law sec. 145 (2001). Beyond that, its larger purpose is "to encourage capable men to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve." *Id.*

As we stated in *VonFeldt*, we will "eschew narrow construction of the statute (section 145) where an over literal reading would disserve" these policies. *VonFeldt*, 714 A.2d at 84–85 (also noting the Court's aversion to "undue formalism" and refusing to engage in a "hyper-technical exercise"). Additionally, without an award of attorneys' fees for the indemnification suit itself, indemnification would be incomplete. There is no compelling reason to deprive claimants of full indemnification, in accordance with the policy of § 145. *Merritt–Chapman & Scott Corporation v. Wolfson*, 321 A.2d 138, 144 (Del.Super.1974); *see also* Josiah O. Hatch, *Policing the Limits of Indemnification: Is Delaware Changing its Public Policy on Director and Officer Protection?*, 12 No. 1 Insights 9, *11 (1998) ("Articulate and analytical as it is, *Mayer* seems a 'glass half-empty' view of the Delaware statute and a departure from the spirit and reasoning of earlier cases construing it.").

We hold that indemnification for expenses incurred in successfully prosecuting an indemnification suit are permissible under § 145(a), and therefore "authorized by law." Allowing indemnification for the expenses incurred by a director in pursuing his indemnification rights gives recognition to the reality that the corporation itself is responsible for putting the director through the process of litigation. Further, giving full effect to § 145 prevents a corporation from using its "deep pockets" to wear down a former director, with a valid claim to indemnification, through expensive litigation. Finally, corporations will not be unduly punished by this result. They remain free to tailor their indemnifi-

cation bylaws to exclude "fees on fees," if that is a desirable goal.

## VI

■  Cochran further claims in his cross-appeal that the Court of Chancery erred in holding that three of the claims in the arbitration action (the Compensation Claim, the Promissory Note Claim, and the Non–Compete Claim) were brought against Cochran in his personal capacity and that § 145 and the Indemnification Bylaw therefore did not apply. Stifel contends these three claims were brought against Cochran solely for actions he took in his personal capacity and for his own personal benefit. The Court of Chancery agreed with Stifel and granted summary judgment in its favor. Our standard and scope of review of a summary judgment decision is *de novo*. *Arnold v. Society for Savings Bancorp, Inc.*, 650 A.2d 1270, 1276 (Del.1994).

The arbitration action was brought against Cochran to enforce certain provisions of an employment contract and promissory note, which Cochran had entered into with Stifel Nicolaus. The Court of Chancery's explanation bears repeating:

> When a corporate officer signs an employment contract committing to fill an office, he is acting in a personal capacity in an adversarial, arms-length transaction. To the extent that he binds himself to certain obligations under that contract, he owes a personal obligation to the corporation. When the corporation brings a claim and proves its entitlement to relief because the officer has breached his individual obligations, it is problematic to conclude that the suit has been rendered an "official capacity" suit subject to indemnification under § 145 and implementing bylaws. Such a conclusion would render the officer's duty

to perform his side of the contract in many respects illusory.

We agree that the claims litigated in the arbitration action were properly characterized as personal, not directed at Cochran in his "official capacity" as an officer and director of Stifel Nicolaus. *See Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d 578, 594 (Del.Ch.1994) (holding that former officer was not entitled to indemnification for claims relating to breach of her employment contract because those claims did not involve the officer's duties to the corporation and its shareholders). Stifel Nicolaus based the Compensation Claim, the Promissory Note Claim, and the Non–Compete Claim on the employment contract Cochran entered into with the company. Although Cochran's termination is the event that triggered the relevant provisions of the employment contract, Cochran's decision to breach the contract was entirely a personal one, pursued for his sole benefit. Further, the underlying accusations against Cochran which gave rise to his termination for cause were considered by the arbitrators, but found to be irrelevant to the simple dispute before them—whether Cochran breached his employment contract.

We affirm the judgments of the Court of Chancery, except as to its decision to dismiss Cochran's claim for "fees on fees." That judgment is reversed and remanded for proceedings consistent with this opinion.