John E. FASCIANA, Plaintiff,

v.

**ELECTRONIC DATA SYSTEMS CORPORATION, a Delaware corporation, Defendant.**

**C.A. No. 19753–NC.**

Court of Chancery of Delaware, New Castle County.

Submitted: June 2, 2003.
Decided: July 1, 2003.

David S. Eagle, Andrew O. Schiff, Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, Wilmington, for Plaintiff.

Bruce E. Jameson, Prickett, Jones & Elliott, P.A., Wilmington; Dorothy Culham, Electronic Data Systems Corporation, Plano, TX, for Defendant.

### OPINION

STRINE, Vice Chancellor.

In this decision, I resolve plaintiff John E. Fasciana's request for indemnification of litigation expenses incurred bringing this action pursuant to § 145 of the Delaware General Corporation Law[1] to enforce his contractual right to obtain an advancement of litigation expenses from defendant Electronic Data Systems Corporation ("EDS").

Fasciana served as outside counsel to EDS. In 2001, a federal grand jury returned an indictment against Fasciana, which in simple terms alleged that Fasciana had conspired with certain EDS insiders in a conscious scheme to defraud EDS. EDS, for its part, filed a civil action against Fasciana in a Texas federal court. EDS predicated its civil action on the same factual background that formed the basis for the federal indictment. Fasciana then filed this suit seeking an advancement of litigation expenses to defend himself against the federal indictment and the EDS civil action. In an earlier memorandum opinion, I partially granted Fasciana's request for an advancement.[2] Indeed, although I found that Fasciana was entitled to a partial advancement, in major part his advancement request was denied.[3]

Presently before me is Fasciana's request for an award of litigation expenses incurred in the process of bringing his § 145 claim. Fasciana argues that his partial success should lead to a full award of attorneys' fees and expenses incurred in the process of bringing this action. For the reasons stated below, I disagree. Fasciana is entitled to an award of litigation expenses for bringing his § 145 action under the teaching of the Delaware Supreme Court's *Stifel Financial Corp. v. Cochran*[4] decision. But the "fees on fees" award he should receive must be proportionate to the success he achieved and the efforts required to obtain that success. In this case, Fasciana obtained quite limited — as

---

**1.** 8 *Del. C.* § 145.

**2.** *Fasciana v. Elec. Data Sys. Corp.*, 2003 WL 1016987 (Del.Ch. Feb.27, 2003).

**3.** *Id.* at *8–*9.

**4.** 809 A.2d 555 (Del.2002).

opposed to substantial --- success. To achieve that success, however, Fasciana did have to address certain across-the-board defenses that EDS asserted in order to secure the limited victory he achieved. After considering that factor and the other record evidence bearing on the appropriate award, I exercise my discretion to award fees on fees equal to one-third of the litigation expenses Fasciana incurred.

## I. Facts

Much of the factual background underlying the dispute before me today is discussed in my February 27, 2003 memorandum opinion in this case.[5] Therefore, I will not devote much time to repeating that factual background.

In May 1995, defendant Electronic Data Systems Corporation ("EDS") purchased FACS Incorporated ("FCI"). Among other things, FCI performed asset recovery services for clients involving the identification of client funds that had been erroneously escheated as abandoned property. John E. Fasciana, a New York attorney, represented FCI and its stockholders in selling FCI to EDS. After the acquisition, Fasciana continued to perform legal work for FCI --- which was then operated as Global Financial Markets Group ("GFMG"), a division of EDS. In other words, as GFMG's attorney, Fasciana functioned as an attorney for EDS.

Under the terms of a purchase agreement, EDS agreed to purchase FCI for an initial cash payment of $6 million to FCI's stockholders. In addition to this cash payment, EDS placed $3 million into an escrow account that was to be controlled by Fasciana's law firm --- Fasciana & Associates, P.C. --- as escrow agent. Of that $3 million held in escrow, $2 million could be earned by the former FCI stockholders based on FCI's performance during the remainder of 1995. The other $1 million could be earned if certain performance targets were achieved and certain outstanding receivables of FCI were collected. Finally, EDS agreed to make up to $14 million in payments under an incentive compensation plan to certain former FCI stockholders provided that GFMG met specified earnings targets during a three-year period beginning in 1996.

In December 2001, Fasciana was indicted by a federal grand jury in the Southern District of New York on various counts of conspiracy, mail fraud, and wire fraud.[6] Additionally, EDS filed a civil action against Fasciana in the United States District Court for the Eastern District of Texas.[7] The causes of action recited in the civil action are: (1) attorney malpractice and negligence; (2) gross negligence; (3) breach of fiduciary duty; (4) fraud; and (5) breach of contract. Without getting lost in the details, the crux of both the criminal indictment and the civil action can be stated thusly: Fasciana participated in a scheme to defraud EDS by inducing EDS to make certain contingent payments under the escrow agreement and the incentive compensation plan when, in fact, the requisite contingencies had not occurred. As part of the scheme, Fasciana received kickbacks from the recipients of the fraudulent contingent payments --- i.e., Fasciana received kickbacks from his co-conspirators.

In both the federal indictment and the civil complaint it is alleged that Fasciana – in furtherance of his and his co-conspira-

5. *Fasciana v. Elec. Data Sys. Corp.*, 2003 WL 1016987 (Del.Ch. Feb.27, 2003).

6. *See generally United States v. Reddy*, No. S3 01 Cr. 58(LTS), Indictment (S.D.N.Y. Dec. 4, 2001) [hereinafter Indictment].

7. *See generally Elec. Data Sys. Corp. v. Fasciana*, C.A. No. 4:01cv93, 2d Am. Compl. (E.D.Tex. Jan. 17, 2002) [hereinafter EDS Compl.].

tors' scheme to defraud EDS – made certain material misrepresentations on behalf of EDS to two GFMG clients – Kidder, Peabody & Co. ("Kidder") and Kidder's parent company, General Electric Capital Co. ("GECC").[8] Fasciana allegedly made these material misrepresentations to GECC and Kidder as part of the scheme to induce EDS to make the $2 million payment under the escrow agreement.[9]

In response to the federal indictment and EDS's civil action, Fasciana filed an action against EDS in this court seeking an advancement of litigation expenses pursuant to 8 *Del. C.* § 145. Both Fasciana and EDS filed motions for summary judgment. For reasons that do not warrant full repetition, in my February 27 decision I granted in part and denied in part each side's summary judgment motion. As a result, EDS was only required to advance *some* of the litigation expenses for which Fasciana sought advancement.

In fact, Fasciana's victory — if it can be called that — was an exceedingly limited one. EDS was only required to advance litigation expenses necessary for Fasciana to respond to a narrow subset of the claims made against him by the federal government and EDS — *i.e.,* for the most part Fasciana's request for advancement was denied.[10] Specifically, EDS was only

required to advance litigation expenses necessary for Fasciana to respond to charges related to his dealings with certain third parties — *i.e.,* GECC and Kidder – on behalf of EDS. In other words, Fasciana was only eligible for an advancement to respond to allegations that he acted improperly as EDS's agent.[11] This distinction between Fasciana's activities as an EDS agent and his non-agent activities is an important one because EDS's bylaws only mandated advancement of litigation expenses for directors, officers, employees, and agents.[12]

What I did not address in my February 27 opinion was whether, and to what extent, EDS was liable to indemnify Fasciana for litigation expenses incurred in the process of bringing this § 145 advancement action. Instead, I ordered the parties to provide briefing on the issue of the extent of EDS's liability for these so-called "fees on fees."[13] In this memorandum opinion, I resolve this issue.

## II. *Legal Analysis*

A. *EDS's Bylaw Provision Requires EDS to Indemnify Fasciana for Fees on Fees to the Full Extent Permitted by 8* Del. C. § 145.

◼ As an initial matter, I find that EDS is obligated to indemnify Fasciana

---

**8.** *See* Indictment ¶¶ 20, 34(a) & 35(e); EDS Compl. ¶¶ 23–25. Actually, EDS's complaint only mentions GECC, but the federal indictment mentions both GECC and Kidder.

**9.** *See* Indictment ¶¶ 20, 34(a) & 35(e); EDS Compl. ¶¶ 23–25.

**10.** *See id.* at *8 (stating that Fasciana is eligible to receive an advancement to respond to allegations that he made misrepresentations to certain EDS clients, but not to respond to allegations merely *involving his conduct as* EDS's legal advisor).

**11.** *Cf. Fisher v. Townsends, Inc.,* 695 A.2d 53, 57–58 (Del.1997) ("An agency relationship is created when one party consents to have an-

other act on its behalf, with the principal controlling and directing the acts of the agent." (citations and internal quotation marks omitted)).

**12.** *See* EDS Bylaws, art. 6.1.

**13.** "Fees on fees" is a term of art that refers to an award of litigation expenses (including attorneys' fees) incurred in the process of obtaining another award of litigation expenses pursuant to some statutory or contractual authority. *Cf. Stifel Fin. Corp. v. Cochran,* 809 A.2d 555, 561–62 (Del.2002) (using the term "fees on fees" in that context).

for fees on fees incurred to the full extent permitted by § 145. EDS's bylaws contain the following provision:

> Each person who at any time shall serve or shall have served as a Director, officer, employee, or agent of the Corporation ... shall be entitled to (a) indemnification and (b) advancement of expenses incurred by such person from the Corporation as, and to the fullest extent, permitted by Section 145 of the [Delaware General Corporation Law] or any successor statutory provision, as from time to time amended.[14]

In my February 27, 2003 memorandum opinion in this matter, I decided that by adopting this bylaw, "EDS has bound itself to provide [Fasciana] with advancement for claims against him in the capacity of an agent for EDS if § 145 of the [Delaware General Corporation Law] would allow."[15] Under the mandate of the Delaware Supreme Court's decision in *Stifel Financial Corp. v. Cochran*, this bylaw requires an award to Fasciana of the fees he incurred in vindicating his advancement rights.[16] In *Cochran*, the Delaware Supreme Court overturned a line of Chancery Court authority holding that "fees on fees" were not due under maximal by laws like EDS's.[17] It did so based on the policy judgment that "the corporation itself is responsible for putting the [corporate official] through the ... [§ 145] litigation" and that by allowing for fees on fees corporations will be prevented "from using [their] 'deep pockets' to wear down a former [corporate official]."[18]

Because EDS's bylaws clearly require EDS to provide indemnification to a corporate agent to the fullest extent permitted by § 145,[19] *Cochran* requires that EDS's bylaw be read as requiring it to indemnify Fasciana for any reasonable fees on fees incurred by him, but only to the extent permitted by § 145.[20]

EDS disputes this reading of *Cochran* and contends that an award of fees on fees is not available because the underlying suit for which Fasciana seeks attorneys' fees is an advancement action, as opposed to an indemnification action. I disagree.

It is, of course, true that a § 145 advancement can be though of as an extension of credit, the final repayment of which is conditioned on whether a corporate offi-

---

**14.** EDS Bylaws, art. 6.1.

**15.** *Fasciana*, 2003 WL 1016987, at *5 (emphasis omitted).

**16.** *See* 809 A.2d 555, 560–62 (Del.2002).

**17.** That line began with *Mayer v. Executive Telecard, Ltd.*, 705 A.2d 220 (Del.Ch.1997). *See generally* David A. Drexler et al., *Delaware Corporation Law and Practice* § 16.02(2) ("In a landmark decision, *Stifel Financial Corporation v. Cochran*, the Supreme Court ruled that indemnification for expenses, including attorneys fees, incurred in successfully prosecuting an indemnification action are permissible under 145 and for that reason are mandated by a bylaw or contractual provision calling for indemnification to the 'fullest extent permitted by law.' In so ruling, the Court rejected a series of Chancery Court rulings, holding that

the American Rule, which generally requires litigants to bear their own expenses, controlled suits for indemnification." (footnotes omitted)).

**18.** *Cochran*, 809 A.2d at 561.

**19.** *See Fasciana*, 2003 WL 1016987, at *5 (interpreting identical bylaw similarly); *Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761, at *3 (Del.Ch. June 18, 2002) (same).

**20.** *Cf. Cochran*, 809 A.2d at 561–62 ("[Corporations] remain free to tailor their indemnification bylaws to exclude 'fees on fees,' if that is a desirable goal."); R. Franklin Balotti & Jesse A. Finkelstein, *Delaware Law of Corporations and Business Organizations* § 4.23 (2003) ("[A] corporation must explicitly tailor its by-laws to exclude 'fees on fees' if it seeks to preclude such recovery.").

cial is ultimately entitled to indemnification.[21] That said, the right to an advancement pursuant to § 145 and a corporate bylaw is an important one for the corporate official who is faced with expensive litigation relating to his conduct on behalf of the corporation. Any rational corporate official faced with the choice of after-the-fact indemnification or up-front advancement would surely choose the latter. When a corporate official is entitled to an advancement of litigation expenses, the corporation wrongfully refuses to honor the official's advancement request, and, as a result, the official needs to bring a § 145 claim to enforce his contractual right, then it seems plain under the teaching of *Cochran* that reasonable fees on fees are in order. The fact is that the right to advancement is no less of a § 145 right than the ultimate right to indemnification. And, the reasoning of *Cochran* (that the public policy purposes of the rights authorized by § 145 would be incompletely vindicated if a corporate official had to bear the expense of enforcing that right)[22] is, therefore, no less applicable to the advancement right than to the indemnification right.

In fact, in a later case, *Reddy v. Electronic Data Systems Corp.*, this court held that EDS's bylaw – per *Cochran* – entitled an officer to "fees on fees" for prevailing in an advancement action.[23] On appeal, the Supreme Court affirmed that ruling.[24] The *Reddy* holding applies here.

### B. *Fasciana's Request for Fees on Fees is a Request for Indemnification, Not a Request for Advancement*

In its answering brief, EDS contends that "[i]f Fasciana is ultimately required to repay the substantive amounts advanced to him, he would also be required to repay any amounts advanced to him for pursuing advancement."[25] In making this statement, EDS reveals its misunderstanding of the current procedural posture. In the present fees on fees litigation, Fasciana is actually seeking indemnification and not an advancement. He is partially entitled to that indemnification because he has already partially succeeded in litigation in which he was a party. *Cochran* makes clear that the "in any action" language of § 145(a) is broad enough "to encompass the [§ 145] action itself."[26]

Thus, Fasciana's present predicament should be conceived of as involving three separate and independent litigations: the federal indictment, the EDS civil action, and the § 145 action. Ultimate lack of success on the first two would not alter the fact that he was partially successful on the third — and for that partial success he is entitled to a partial indemnification, not a partial advancement. No matter what eventuates in the criminal action and the civil action, Fasciana's partial victory in the § 145 action brought him a real benefit: the interest-free use of EDS's money until his entitlement to indemnification for the criminal action and the civil action is finally determined. Fasciana is being

21.  *See Advanced Mining Sys., Inc. v. Fricke*, 623 A.2d 82, 84 (Del.Ch.1992).

22.  *See Cochran*, 809 A.2d at 561 ("[W]ithout an award of attorneys' fees for the indemnification suit itself, indemnification would be incomplete.").

23.  *Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761, at *9 (Del.Ch. June 18, 2002).

24.  *Elec. Data Sys. Corp. v. Reddy*, 820 A.2d 371 (Del.2003).

25.  EDS's Answering Br. at 6–7.

26.  *Cochran*, 809 A.2d at 561.

awarded fees on fees per *Cochran* because EDS was at least partially wrong in denying Fasciana his requested advancement.[27] Even if Fasciana is ultimately adjudged not to be entitled to indemnification for the criminal action and the civil action, that fact would not cure EDS's wrongful denial of Fasciana's advancement rights and the harm that denial caused to Fasciana.

### C. *Because of His Very Limited Success on His Advancement Claim, Fasciana is Only Entitled to a Partial Award of Fees on Fees*

The more difficult question in this case is how to give life to *Cochran* in a case in which the party seeking advancement prevailed on less than all of his claims; indeed, when he prevailed on a small portion of the relief he sought. *Cochran* provides only a starting point, by conditioning the right to fees on fees on success.[28] But what is the scope of the entitlement that flows from partial success rather than substantial success?

Naturally, Fasciana urges me to take a black or white approach to the concept of success – *i.e.*, if Fasciana achieved any success, then he is entitled to a full award of fees on fees.[29] He says this generous approach best implements the policy articulated in *Cochran*. EDS, for its part, argues that any award of fees on fees must be limited to reflect the fact that Fasciana only achieved a partial victory in his underlying advancement action.[30]

For the reasons stated below, I opt for an approach closer to the one pressed by EDS. Both § 145 and bylaw provisions like that adopted by EDS are subject to an implied reasonableness requirement.[31] That reasonableness requirement, as well as *Cochran*'s admonition that awards of fees on fees are conditioned on the successful prosecution of an underlying § 145 action, lead me to conclude that Fasciana should only be entitled to an indemnification of those expenses reasonably proportionate to the level of success he achieved.

In so finding, I begin with a normative proposition. Put simply, the incentive structure to put *Cochran* into practice should be a sensible one. Fasciana's rule would encourage attorneys for parties seeking advancement to raise any conceivable argument that can pass Rule 11 muster knowing that any level of ultimate success would warrant a full fees on fees award. Limiting fees on fees awards by imposing a proportionality requirement encourages parties seeking advancement or indemnification to raise only substantial claims and encourages corporations to compromise worthy claims (lest they suffer a fees on fees award) and resist less meritorious claims (knowing that success will bar a fees on fees recovery for the plaintiff).

The idea that an award of attorneys' fees should be reduced to reflect the fact that a party only achieved limited or partial success is not a novel one. Instead, it builds on federal and state precedents in

---

**27.** *See id* at 560–61; *see also DiGiacomo v. Bd. of Pub. Ed.*, 507 A.2d 542, 547 (Del.1986) (suggesting that an award of fees on fees in the context of a workman's compensation claim was justified by the remedial nature of the workman's compensation statute).

**28.** *See id.* ("We hold that indemnification for expenses incurred in *successfully prosecuting* an indemnification suit are permissible under

§ 145(a), and therefore 'authorized by law.' " (emphasis added)).

**29.** *See* Fasciana's Opening Br. at 3; Fasciana's Reply Br. at 8–13.

**30.** *See* EDS's Answering Br. at 14–18.

**31.** *See Citadel Holding Corp. v. Roven*, 603 A.2d 818, 823 (Del.1992).

analogous settings. For instance, in *Hensley v. Eckerhart*,[32] the United States Supreme Court addressed the appropriate way to determine a fee award under the Civil Rights Attorney's Fees Awards Act of 1976.[33] Therein, the Court held:

> the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. *But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.*[34]

Likewise, under Court of Chancery Rule 54 (and its federal counterpart, Federal Rule of Civil Procedure 54), a court may reduce the size of an award of costs to a prevailing party if that party only achieved partial success.[35]

Section 145 jurisprudence also points in this same direction. In *Merritt–Chapman & Scott Corp. v. Wolfson*, the Delaware Superior Court concluded that a § 145 claimant is entitled to a partial indemnification if he successfully defends himself against one count of a criminal indictment but is convicted on another count.[36] Likewise, in *MCI Telecommunications Corp. v. Wanzer*, the Superior Court held that a former corporate director was entitled to a partial § 145 indemnification when he successfully defended against three of the four counts of a civil complaint filed against him.[37] Indeed, this court has itself endorsed the approach taken by *Merritt–Chapman* and *MCI Telecommunications*.[38]

---

**32.** 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

**33.** 42 U.S.C. § 1988.

**34.** *Hensley*, 461 U.S. at 440, 103 S.Ct. 1933 (emphasis added).

**35.** *See Simmons v. Am. Exp. Lines, Inc.*, 26 F.R.D. 111, 112 (S.D.N.Y.1960) ("It is appropriate for a court, in the exercise of its discretion, to apportion costs."); *Brandin v. Gottlieb*, 2000 WL 1005954, at *27 (Del.Ch. July 13, 2000) ("[A] party ... who has prevailed on most of her claims, is appropriately deemed a prevailing party, and the court may award costs to her. Yet under such rules of procedure, such as Court of Chancery Rule 54, the court typically retains the discretion not to shift costs or to split costs in an equitable fashion." (footnotes omitted)); Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2667, at 212–19 (3d ed. 1998) ("In some cases of this type, however, the court will apportion costs among the parties or reduce the size of

the prevailing party's award to reflect the partial success." (footnotes omitted)).

**36.** *See* 321 A.2d 138, 141 (Del.Super.1974) ("Claimants are ... entitled to partial indemnification if successful on a count of an indictment, which is an independent criminal charge, even if unsuccessful on another, related count."); *see also* Rodman Ward, Jr. et al., *Folk on the Delaware General Corporation Law* § 145.6 (stating that § 145 claimants are entitled to partial indemnification when they are partially successful in the pertinent underlying litigation); Robert P. McKinney, *Protecting Corporate Directors and Officers: Indemnification*, 40 Vand. L.Rev. 737, 741 (1987) ("Delaware ... explicitly require[s] partial indemnification 'to the extent' of any partial success.").

**37.** *See* 1990 WL 91100, at *11 (Del.Super. June 19, 1990).

**38.** *See Cochran v. Stifel Fin. Corp.*, 2000 WL 1847676, at *4 n. 10 (Del.Ch. Dec. 13, 2000), *aff'd in part, rev'd in part*, 809 A.2d 555 (Del. 2002).

Fasciana seems to suggest that a different approach is warranted when a court is awarding fees on fees pursuant to § 145. Besides the fact that several federal courts have considered this issue in similar contexts and have rejected a special rule for fees on fees awards,[39] the approach suggested by Fasciana finds no support in the text of § 145 or in *Cochran*. If *Cochran* holds that fees on fees are merely one type of award under § 145 – and that is how I read it – then there is no reason to create a different set of rules governing the availability and extent of fees on fees awards.[40]

Clearly, the public policy underlying the advancement and indemnification provisions of § 145 is an important one.[41] By enacting § 145, our General Assembly helped ensure that capable persons would be willing to serve as directors, officers, employees, and agents of Delaware corporations. But those indemnification and advancement provisions are not a blank check for corporate officials. The costs of indemnification are borne by corporations and ultimately by their stockholders. Fasciana's right to obtain fees on fees for the arguments raised in his § 145 action that were unsuccessful does not outweigh the right of EDS's stockholders to resist having to bankroll that part of Fasciana's claim that EDS was correct to oppose.

The relief that Fasciana received was extremely limited. In this litigation, Fasciana sought a complete advancement of his litigation expenses for the criminal action and the civil action. Instead of his requested relief, I ordered that Fasciana receive an advancement to respond to a very narrow subset of the claims brought against him by EDS and the federal government.[42] Put simply, Fasciana did not obtain the type of "excellent result" that would render him a prevailing party and therefore entitle him to "a fully compensatory fee."[43] Instead, Fasciana only achieved partial or limited success, and, as a result – and in keeping with *Hensley*; *Merritt–Chapman*, and Delaware and federal Rule 54 jurisprudence – a diminution in Fasciana's requested fees on fees is in order.[44] In other words, Fasciana's requested fees on fees will be discounted such that the amount of fees on fees awarded "is reasonable in relation to the results obtained" by Fasciana.[45]

### D. *What Award is Reasonable in View of Fasciana's Level of Success?*

In the underlying § 145 litigation, Fasciana sought a full advancement of litigation expenses to respond to charges made against him in a criminal indictment and a civil action. In order to achieve that result, Fasciana needed to convince me that he was responding to charges brought

---

**39.** *See Nanetti v. Univ. of Ill. at Chicago*, 944 F.2d 1416, 1420 (7th Cir.1991); *In re Burlington Northern, Inc., Employment Practices Litig.*, 832 F.2d 430, 436 (7th Cir.1987); *Harris v. McCarthy*, 790 F.2d 753, 758–59 (9th Cir. 1986); *K.L. v. Edgar*, 2001 WL 184974, at *3 (N.D.Ill.2001) *Simpson v. Sheahan*, 1996 WL 284942, at *3 (N.D.Ill.1996). These cases arose when parties were seeking "fees" for the costs incurred in preparing attorneys' fees petitions.

**40.** *See Cochran*, 809 A.2d at 561 (emphasizing that the statutory basis for fees on fees in § 145).

**41.** *See generally* Ward § 145.2.

**42.** *See generally Fasciana*, 2003 WL 1016987.

**43.** *See Hensley*, 461 U.S. at 435, 103 S.Ct. 1933.

**44.** *See id.* at 436–37, 103 S.Ct. 1933; *Merritt–Chapman*, 321 A.2d at 141; *Brandin*, 2000 WL 1005954, at *27; *Simmons*, 26 F.R.D. at 112.

**45.** *Hensley*, 461 U.S. at 440, 103 S.Ct. 1933.

against him for actions he took in the capacity of an agent for EDS. In his attempt to convince me that his actions were those of an agent (and therefore within the ambit of § 145 and EDS's bylaws), Fasciana pressed two principal arguments: (1) that a corporation's outside counsel is an agent of that corporation because a lawyer is always the agent of his client and (2) that a lawyer who acts as an escrow agent is an agent of the party that places the subject funds into the escrow account.

I rejected both of these arguments and instead concluded that "the General Assembly [in drafting § 145] intended that the term [agent] be used in its most traditional sense as involving action by a person (an agent) acting on behalf of another (the principal) as to third parties."[46]  As such, I held that Fasciana was only entitled to an advancement of litigation expenses to respond to a narrow subset of the claims made against him — i.e., those claims involving Fasciana's dealings (specifically, making false representations) with a third party (specifically, GECC or Kidder) on behalf of EDS. It is helpful to quantify what this holding meant in light of the charges made against Fasciana by the federal government and EDS. The federal indictment contained thirty-nine paragraphs.  When asked by me to point to those parts of the federal indictment relating to Fasciana's false representations to GECC or Kidder, Fasciana's counsel was only able to identify three — paragraphs 20, 34(a), and 35(e).[47]  And, when Fasciana's counsel was asked to perform a similar analysis with respect to EDS's sixty-one-paragraph complaint, again, his counsel could only single out three paragraphs — paragraphs 23 through 25.[48]

Of course, this attempt on my part to quantify Fasciana's level of success is only a rough one — i.e., there are some parts of the federal indictment and the EDS complaint that are not specific to any underlying facts and are, in a sense, of a more general character.[49]  And, there are some litigation expenses that Fasciana would have incurred even if he had merely sought advancement for the claims that I ultimately found to be advanceable. The reason for this is that EDS asserted some across-the-board defenses like laches, that applied to Fasciana's claim for any relief at all.  Fasciana had to address these claims in order to obtain the success he did. Even so, those across-the-board issues were not the predominant focus of the briefs in this case.  The bulk of the briefing addressed arguments on which Fasciana suffered defeat.  The precise argument on which he succeeded involved a miniscule amount of the overall work, as his counsel admitted.[50]  Thus, summarized fairly, two facts emerge as critical: (1) Fasciana's success was very limited in light of the relief he sought and (2) the bulk of Fasciana's briefing in the underlying § 145 action was spent advancing arguments that I ultimately rejected.

46.  *Fasciana*, 2003 WL 1016987, at *6.

47.  *See* Letter from Andrew O. Schiff to Vice Chancellor Leo E. Strine, Jr. 1 (Jan. 21, 2003).

48.  *See id.*

49.  *See, e.g.,* Indictment ¶ 1 (explaining that EDS is a corporation headquartered in Texas that provides data processing and consulting services); EDS Compl. ¶ 2 (discussing venue).

50.  *See* Letter from Andrew O. Schiff to Vice Chancellor Leo E. Strine, Jr. 1 (June 2, 2003) ("Prior to the submission of Mr. Fasciana's post-argument letter dated January 21, 2003, the only portion of Mr. Fasciana's submissions that mentioned [the] issue [of Fasciana's alleged misrepresentations to GECC] specifically are two portions of his reply brief [occupying less than two pages].").

■ To turn these key facts into an award necessarily involves a discretionary judgment that is not mathematically precise.[51] That exercise of discretion is guided, however, by the policies underlying *Cochran*. Thus, I err towards generosity by awarding Fasciana one-third of his litigation expenses. Rather than accept the parties' untimely request for an evidentiary hearing, my ruling is based on the record evidence submitted on this application and my judgment of the award that is reasonably proportionate to Fasciana's partial victory. I am aided in that review by my understanding of how the advancement litigation was argued. This accounts for EDS's across-the-board defenses and generously compensates Fasciana for the very limited success he achieved.[52]

### III. *Conclusion*

For the foregoing reasons, it is ORDERED that:

(1) Fasciana shall provide to EDS, by no later than July 15, 2003, an accounting of all litigation expenses (including attorneys' fees) incurred in prosecuting his § 145 action against EDS. This accounting shall include expenses related to this final "fees on fees" stage of the litigation. Fasciana's counsel shall certify by affidavit that the information contained in the accounting is complete and accurate to the best of their knowledge.

(2) The parties shall submit to the court, by no later than July 25, 2003, a proposed final order consistent with this opinion.

---

51. *Cf. Williams v. Hanover Hous. Auth.*, 113 F.3d 1294, 1300 (1st Cir.1997) (discussing the use of judicial discretion in setting an attorneys' fees award under 42 U.S.C. § 1988).

52. This fraction — *i.e.*, one-third — is coincidental to a litigation reality. The federal indictment and the EDS complaint essentially relate to Fasciana's scheme to defraud EDS with respect to three distinct "pots" of money: (1) the $2 million escrow payment for 1995 performance; (2) the $1 million escrow payment contingent on meeting certain performance targets and collecting certain outstanding receivables; and (3) the $14 million incentive compensation plan. The allegations to the effect that Fasciana made certain false representations to GECC and Kidder only relate to the first of these three "pots" — hence, the one-third figure. Although my award is not driven by this breakdown, the breakdown has some relevance and buttresses my conclusion. *See MTX Communications Corp. v. LDDS/WorldCom, Inc.*, 2001 WL 674142, at *2 (S.D.N.Y. June 15, 2001) (using a similar quantitative-style analysis to determine a reasonable attorneys' fees based on a *Hensley* analysis).