**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: December 3, 2021
Date Decided: December 10, 2021

Richard P. Rollo, Esquire
Angela Lam, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

R. Karl Hill, Esquire
Seitz Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
Wilmington, DE 19801

Re: *Macrophage Therapeutics, Inc. v. Goldberg*
C.A. No. 2019-0137-JRS

Dear Counsel:

Counsel for Plaintiff, Macrophage Therapeutics, Inc. ("Macrophage"), have submitted applications under Chancery Rule 88 (the "Applications") in which they seek reimbursement for attorneys' fees and costs associated with attempts to resolve and, later, the successful prosecution of a "Motion for Defendant Michael M. Goldberg's Contempt of the *Status Quo* Order" (the "Motion").[1] In total, counsel for Macrophage seeks $66,796.33 as fees and expenses incurred in connection with

---

[1] *See* D.I. 60 (the Motion); D.I. 78 (Order granting the Motion).

the Motion.[2]  Defendant, Michael M. Goldberg, M.D. ("Dr. Goldberg"), opposes the

Applications on the ground that the fees and expenses, as requested, are excessive.[3]

In the Motion, Macrophage argued that Dr. Goldberg violated the Court's

*Status Quo* Order by failing to return Macrophage property he was ordered to return,

deleting electronic data he was ordered to preserve, holding himself out as having

sole authority to act for Macrophage when ordered not to do so, and making

disparaging comments about Macrophage managers when ordered not to do so.

After a hearing, the Court granted the Motion upon concluding that Dr. Goldberg

had knowingly violated the *Status Quo* Order as alleged.  In paragraph 4 of the

Court's Order granting the Motion, the Court stated: "Goldberg will pay

Macrophage's fees and costs in connection with all steps necessary to cure the

---

[2] This amount was revised downward slightly from the amount initially sought in the Applications following corrections made in Macrophage's Reply in Further Support of Rule 88 Affidavits of Richard P. Rollo, Esquire and Barry M. Kazan, Esquire. *See* D.I. 231. The fees reflect work performed attempting the resolve the contempt, preparing and filing the Motion with supporting brief, reviewing the Opposition to the Motion, preparing a reply brief in support of the Motion, presenting the Motion at a contested hearing and then preparing and submitting an implementing order. *Id.*

[3] D.I. 228.

damage that has been caused by Goldberg's noncompliance with the [*Status Quo Order*]."[4]

The Order granting the Motion was entered on May 23, 2019.[5] Thereafter, the parties continued with discovery, motion practice and ultimately tried Macrophage's claims against Dr. Goldberg in December 2020. The Court's post-trial decision was issued on June 23, 2021, reflecting the Court's verdict that Dr. Goldberg had breached his fiduciary duty of loyalty to Macrophage and its stockholders, but awarding only nominal damages.[6] The Court entered its final judgment to that effect on August 6, 2021.[7]

Chancery Rule 88 applies to fee awards imposed as a contempt sanction.[8] The rule "does not provide an independent basis for the reimbursement of a litigant's

---

[4] D.I. 78 at ¶ 4.

[5] *Id.*

[6] D.I. 213.

[7] D.I. 222.

[8] *See Dickerson v. Castle*, 1992 WL 205796, at *1–2 (Del. Ch. Aug. 21, 1992).

expenses. . . ."[9]  Instead, it regulates the procedure by which an application for fees is made.[10]  "To assess a fee's reasonableness, case law directs a judge to consider the factors set forth in the Delaware Lawyers' Rules of Professional Conduct. . . ."[11] The factors are: "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent."[12]

---

[9] *Gaffin v. Teledyne, Inc.*, 1993 WL 271443, at * 1 (Del. Ch. July 13, 1993).

[10] *Id.*

[11] *Mahani v. EDIX Media Gp., Inc.*, 935 A.2d 242, 245 (Del. 2007); Del. Lawyers' R. Prof'l Conduct 1.5(a).

[12] *Id.* at 245–46.

When awarding expenses as a contempt sanction or for bad faith litigation tactics, this Court takes into account the remedial nature of the award.[13] "Such an award is designed to make whole the party who was injured by the other side's contumely."[14] With this design in mind, the "primary emphasis is on reimbursing the injured party. The results achieved are of secondary importance."[15]

"Determining reasonableness does not require that this Court examine individually each time entry and disbursement."[16] Instead, the Court will consider

---

[13] *See In re SS & C Techs., Inc. S'holders Litig.*, 2008 WL 3271242, at *3 n.14 (Del. Ch. Aug. 8, 2008) (noting that because fees were awarded as a sanction, the Court did not focus narrowly on the Rule 1.5(a) factors); *Lynch v. Gonzalez*, 2020 WL 5587716, at *6 (Del. Ch. Sept. 18, 2020) (emphasizing that the court's focus when addressing fee applications following contempt finding should be on "reimbursing the injured party"); *Arbitrium (Cayman Islands) Handels AG v. Johnston*, 1998 WL 155550, at *3 (Del. Ch. Mar. 30, 1998) (taking into account that fees were shifted because of bad faith litigation tactics when evaluating award).

[14] *Aveta, Inc. v. Bengoa*, 2010 WL 3221823, at *6 (Del. Ch. Aug. 13, 2010).

[15] *Id.*

[16] *Id. See also Weichert Co. v. Young*, 2008 WL 1914309, at *2 (Del. Ch. May 1, 2008) ("A discussion of each specific invoice item that Young contests would neither be useful nor practicable."); *Blank Rome, LLP v. Vendel*, 2003 WL 21801179, at *8–10 (Del. Ch. Aug. 5, 2003) (rejecting alleged requirement of line-item review for contractual fee-shifting provision); *M & G Polymers USA, LLC v. Carestream Health, Inc.*, 2010 WL 1611042, at *76 (Del. Super. Ct. Apr. 21, 2010) (finding no authority that "requires this Court to engage in a line-by-line analysis of the components of an attorneys'

the Rule 1.5(a) factors as a guide and then exercise its discretion in reaching a reasonable fee award, acknowledging that "mathematical precision" is neither necessary nor readily achievable.[17]

Dr. Goldberg's opposition to the Applications rests on four grounds: (1) the Motion was straightforward and should have required little by way of attorney time to prepare and present; (2) the Motion achieved little by way of success since, by the time the Motion was presented, Macrophage had already ceased operations and, therefore, did not need the property and data Dr. Goldberg was alleged to have retained in violation of the *Status Quo* Order; (3) the Applications fail to disclose the billing rates of counsel; and (4) the time entries reflected on counsels' bills, as submitted, are too redacted to allow any meaningful review. I address each in turn.

---

fee application when an award of fees is based upon the bad faith exception to the American Rule").

[17] *See Fasciana v. Elect. Data Sys. Corp.*, 829 A.2d 178, 188 (Del. Ch. 2003).

### 1. The Time and Labor Required, the Novelty and Difficulty of the Questions Involved, and the Skill Requisite to Perform the Legal Service Properly

All parties to the litigation, including Dr. Goldberg, were subject to the *Status Quo* Order entered by the Court.[18]  The Court found, and counsels' time entries reflect, that Dr. Goldberg began to take actions in violation of the *Status Quo* Order soon after it was entered.[19]  Counsel for Macrophage attempted to secure Dr. Goldberg's compliance and then brought the Motion when those efforts failed. While the issues involved were not particularly novel or complex, the time entries reflect that counsel took care to present a well-supported, well-researched Motion, as to be expected when counsel asks the Court to find an adverse party in contempt of a Court order.[20]  Dr. Goldberg's argument to the contrary is rejected.[21]

---

[18] D.I. 31.

[19] D.I. 77; D.I. 225, 226, 231 (Rule 88 Affidavits of Counsel, with attached Billing Invoices).

[20] *See Aveta, Inc.*, 2010 WL 3221823, at *6–7.

[21] *See id.* (reviewing fee request and observing that the fees were "within the range of what a party reasonably could incur over the course of ten months pursuing an adversary engaged in a 'mix of open defiance, evasion and obstruction.'").  While the timeframe

### 2. The Amount Involved and the Results Obtained

As noted, when fees are incurred to expose a party's contempt of court, "[t]he results achieved are of secondary importance."[22]   With that said, I disagree with Dr. Goldberg that Macrophage achieved minimal results from bringing the Motion.   Dr. Goldberg took certain devices belonging to Macrophage and then refused to return them when ordered to do so.   After the successful prosecution of the Motion, Dr. Goldberg finally complied with the Court's *Status Quo* Order.   That is meaningful success.   Moreover, following the Court's Order granting the Motion, Dr. Goldberg apparently ceased making disparaging comments regarding Macrophage's management to Macrophage's business partners and stopped holding himself out as the voice of Macrophage.   That, too, is success.   Finally, the Court's purpose in reviewing the Applications is not to "relitigate [the Motion] in hindsight or place substantial weight on motion-by-motion outcomes in view of the 'remedial nature' of the award that put[s] primary emphasis on reimbursing the injured

---

involved here is clearly less than ten months, the fees requested (and awarded) in *Aveta* exceeded $700,000.  *Id.*

[22] *Id.* at *6.

party."[23]  Macrophage was "injured by Dr. Goldberg's contumely."[24]  It is entitled to be made whole.[25]

### 3. The Billing Rates of Counsel

Dr. Goldberg correctly observed in his opposition that counsel for Macrophage did not identify the billing rates for individual timekeepers.  That omission was corrected in supplemental declarations from counsel attached to Macrophage's reply.[26]  The billing rates are reasonable and consistent with those "customarily charged in the locality for similar legal services."[27]

### 4. Redactions

Dr. Goldberg maintains that the billing records are too heavily redacted to allow for meaningful review.  I disagree.  To be sure, the records are heavily

---

[23] *Lynch*, 2020 WL 5587716, at *6.

[24] *Aveta, Inc.*, 2010 WL 3221823, at *6.

[25] *See id.* (holding that fees incurred in prosecuting a motion for contempt "must be borne by [the contemnor] whose conduct necessitated the services that fee represents.").

[26] D.I. 231, Ex. C, Ex. 3.

[27] Del. Lawyers' R. Prof'l Conduct 1.5(a).

redacted. But the redactions are of time entries describing work unrelated to the

Motion.[28] The unredacted time entries adequately describe the work performed to

mitigate the effects of Dr. Goldberg's contempt and to prepare and prosecute the

Motion. And, with the clarifications provided in Macrophage's reply, which

Dr. Goldberg was given an opportunity to address,[29] I am satisfied the amount

requested is reasonable under the circumstances.[30]

*****

Based on the foregoing, Macrophage's Applications for reimbursement of

attorney's fees are GRANTED. Dr. Goldberg shall reimburse Macrophage for fees

---

[28] D.I. 231.

[29] D.I. 233, 234. I note here that Dr. Goldberg's refrain is that the fees requested are excessive. He does not, however, proffer what he believes would be a reasonable fee request for the work performed, nor does he offer evidence of the fees he incurred in connection with defending the allegations of contempt. *Cf. Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 1001 (Del. Ch. 2012) (observing that party challenging reasonableness of fee request in an advancement action was ordered to submit its own bills).

[30] The reply reveals corrections to time entries attached to counsel's initial Declaration, *see* D.I. 225, Ex. A, that reflected excessive time spent on email correspondence and cite checking the Motion. D.I. 233, Ex. C. The corrections reveal that the time entered combined work on the Motion with work unrelated to the Motion. The corrected submission unbundled that time and seeks reimbursement only for time spent working on the Motion.

and costs incurred in connection with the Motion in the amount of $66,796.33 within

thirty (30) days of the date of this opinion and order.

**IT IS SO ORDERED**.

Very truly yours,

*/s/ Joseph R. Slights III*