# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FRANKLIN BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2017-0480-MTZ |
| | ) | |
| RITE AID CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Date Submitted: February 1, 2019
Date Decided: May 24, 2019

John M. Seaman and Matthew L. Miller, ABRAMS & BAYLISS LLP, Wilmington, Delaware; Ray Shepard, THE SHEPARD LAW FIRM LLC, Pasadena, Maryland; *Attorneys for Plaintiff Franklin Brown*

David J. Margules, Jessica C. Watt, and Evan W. Krick, BALLARD SPAHR LLP, Wilmington, Delaware; William A. Slaughter and William B. Igoe, BALLARD SPAHR LLP, Philadelphia, Pennsylvania; *Attorneys for Defendant Rite Aid Corporation*

**ZURN, Vice Chancellor.**

The plaintiff seeks mandatory indemnification based on success in underlying litigation. That litigation has a knotty history and spans over a decade and across several jurisdictions. But the analysis on the presented facts is straightforward. The plaintiff is undisputedly a covered person who was embroiled in a covered proceeding. And under the simple test for determining success, he prevailed. His motion for partial summary judgment concerning entitlement to indemnification is therefore granted.

## I.    BACKGROUND

Plaintiff Franklin Brown is a former officer and director of Rite Aid, having served as Executive Vice President, Chief Legal Counsel, and Vice Chairman of Rite Aid's board.[1] In the late 1990's, government and internal investigations uncovered that rampant wrongdoing had inflated Rite Aid's earnings.[2] Rite Aid drastically restated its earnings, and it and its officers and directors faced many lawsuits.[3] The

---

[1] Rite Aid has both admitted and challenged that Brown was a Rite Aid officer and director. *Compare* Docket Item ("D.I.") 27 at 17 (describing the summary judgment motion as raising "[f]actual [q]uestions [r]egarding [w]hether [h]e [w]as an [o]fficer or [d]irector"); *id*. at 18 ("Even if Mr. Brown were an 'officer' or 'director'…."); *with* D.I. 40 ¶ 3 (admitting Brown served in those roles); D.I. 24 Ex. 3 (suing Brown and alleging he breached his fiduciary duties as an officer and director); *see also Manzo v. Rite Aid Corp*., 2002 WL 31926606, at *1 (Del. Ch. Dec. 19, 2002) (describing Brown as "Vice Chairman of the Rite Aid board and a former officer").

[2] *Manzo*, 2002 WL 31926606, at *2; D.I. 40 ¶ 19.

[3] D.I. 40 ¶¶ 19-21.

corporate scandal has been described in several opinions.[4]  What matters for this

indemnification lawsuit is that Brown was sued and faced both civil and criminal

liability for the corporate scandal.  "Brown was convicted at [a] jury trial of

conspiracy to commit accounting fraud, filing false statements with the SEC,

conspiracy to obstruct justice, obstruction of grand jury proceedings, obstruction of

government agency proceedings, and witness tampering."[5]  He was sentenced to

prison and his conviction was affirmed on appeal.[6]

The many federal suits concerning the corporate scandal at Rite Aid were

combined into a single multi-district litigation in the United States District Court for

the Eastern District of Pennsylvania.[7]  Rite Aid settled that case in December 2000,

with the Eastern District entering a final order of dismissal in August 2001.[8]  The

final order included language barring certain suits (the "Bar Order").  Rite Aid was

"PERMANENTLY BARRED, ENJOINED AND RESTRAINED from

commencing, prosecuting, or asserting any other claim, however styled, whether for

---

[4] *See generally United States v. Brown*, 595 F.3d 498 (3d Cir. 2010); *Manzo*, 2002 WL 31926606.

[5] *Brown*, 595 F.3d at 503.

[6] *Id*. at 527.  Brown's initial sentence was reversed because of intervening changes in law, and his sentence was altered.  *See id*.; *United States v. Brown*, 429 F. App'x 82, 83 (3d Cir. 2011).

[7] D.I. 40 ¶ 21.

[8] *Id*. ¶¶ 23, 24.

indemnification, contribution or otherwise, and whether arising under state, federal or common law, against the Released Parties based upon, arising out of or relating to the Settled Claims."[9] The definition of Released Party included directors and officers, and so extended to Brown.

Notwithstanding the Bar Order, in 2002, Rite Aid also sued Brown for his misdeeds in the Court of Common Pleas for Cumberland County, Pennsylvania. The operative complaint describes Brown's role as "Vice Chairman of the Board of Directors and Chief Counsel," his criminal proceedings and conviction, and how his actions harmed Rite Aid.[10] Rite Aid asserted eight causes of action against Brown: breach of fiduciary duty (Count I); aiding and abetting breach of fiduciary duty (Count II); fraud (Count III); conspiracy (Count IV); breach of contract related to Brown's obligations as an officer and director (Count V); breach of contract related to Brown's deferred compensation agreement (Count VI); and breach of contract related to Brown's advancement and indemnification claims (Count VII).[11] Finally, in Count VIII, Rite Aid sought a declaration that, "[a]s a result of the conduct of

---

[9] *Id.* ¶ 25. Rite Aid points out the Eastern District "also entered an order approving the settlement of [the] derivative action" and the relevant "order contained nearly identical language as the [] Bar Order" Brown cites. *Id.*

[10] D.I. 24 Ex. 3 ¶¶ 2, 4-9.

[11] *Id.* ¶¶ 13-38.

which Brown has been convicted …, and for the other reasons averred herein, Brown is not entitled to any further payment from the Company."[12]

Brown turned to this Court for advancement of his fees incurred in the Cumberland County Action. Rite Aid attached its complaint in the Cumberland County Action, incorporated the assertions therein, and asserted the same arguments as counterclaims.[13] In 2004, this Court denied Brown's motion to expedite his advancement claim,[14] and deferred decision on Brown's motion to dismiss Rite Aid's counterclaims until the conclusion of the Cumberland County Action.[15] Eventually, in 2008, this Court dismissed the Delaware advancement action for failure to prosecute.[16]

Brown and Rite Aid litigated the Cumberland County Action for over a decade. In 2016, Brown resuscitated the 2001 Bar Order and moved to enjoin Rite Aid from continuing the Cumberland County Action. On June 7, 2016, the Eastern District granted Brown's motion to enforce the Bar Order, stating:

> Rite Aid has brought the Cumberland County Action against Brown in violation of the [] Bar Order in the Settlement Agreement which it freely agreed to fifteen years ago in this PSLRA class action. But we

---

[12] *Id.* ¶ 40.

[13] *Brown v Rite Aid Corp.*, C.A. 094-CC, D.I. 7.

[14] *See Brown v. Rite Aid Corp.*, 2004 WL 723153, at *1 (Del. Ch. Mar. 29, 2004).

[15] *Brown v Rite Aid Corp.*, C.A. 094-CC, D.I. 17.

[16] *Brown v Rite Aid Corp.*, C.A. 094-CC, D.I. 18.

4

cannot allow a violation of this Court's Order to continue. We will grant Brown's motion to enforce the permanent injunction order and enjoin Rite Aid from further pursuing the Cumberland County Action.[17]

Importantly, Rite Aid requested, and the Eastern District agreed, that the ruling enforcing the Bar Order would not preclude Rite Aid from pursuing Count VIII of the Cumberland County Action.[18]

Accordingly, in July 2016 Brown moved to dismiss Count VIII for lack of subject matter jurisdiction because Rite Aid failed to join his wife as an indispensable party.[19] The Cumberland County Court granted Brown's motion to dismiss on July 13, 2017.[20]

Around the same time, on June 30, 2017, Brown filed this action in pursuit of indemnification and advancement. On August 9, 2017, the parties agreed to stay the case to allow Brown to provide Rite Aid "with invoices and supporting documentation relating to [Brown's] asserted entitlement to indemnification and advancement" and to allow "the Parties [to] explore a resolution or narrowing of the issues."[21] The stay was in effect until one of the parties notified the Court "that the

---

[17] *In re: Rite Aid Corp. Sec. Litig.*, 2016 WL 3181717, at *8 (E.D. Pa. June 7, 2016).

[18] D.I. 39 Ex. 5; D.I. 40 ¶¶ 51, 52.

[19] D.I. 40 ¶ 53.

[20] D.I. 24, Ex. 1 (Cumberland County docket showing motion to dismiss (Dkt. Entry 93) and order granting motion to dismiss for lack of subject matter jurisdiction because of failure to join an indispensable party (Dkt. Entry 104)).

[21] D.I. 9.

Parties have concluded their negotiations and/or have been unable to reach a resolution."[22]

Brown filed such a notice on March 8, 2018.[23] The parties then spatted over an appropriate schedule. The Court reviewed the competing positions and bifurcated the case, allowing Brown to move for partial summary judgment regarding his entitlement to indemnification. If the Court ruled for Brown as a matter of law, then Brown would file affidavits itemizing the fees he was requesting indemnification for, and the parties would proceed toward "adjudicating the Damages Motion."[24] The parties followed this procedure, with Rite Aid adding its own motion for judgment on the pleadings.[25] Briefing on Brown's motion for partial summary judgment and Rite Aid's motion for judgment on the pleadings was completed in the summer of 2018, and the case was reassigned to me on October 17.

I heard argument on the motions on November 16 and issued a bench ruling that denied Rite Aid's motion for judgment on the pleadings and granted Brown leave to amend an advancement claim to seek indemnification.[26] I also asked the parties for supplemental submissions on Brown's entitlement to indemnification.

---

[22] *Id.*

[23] D.I. 10.

[24] D.I. 16 ¶ 3.

[25] D.I. 21.

[26] D.I. 38, 42.

The parties provided those submissions on December 21, 2018, January 18, 2019, and February 1, 2019.[27] This opinion provides my ruling on Brown's motion for partial summary judgment.

## II.    ANALYSIS

Court of Chancery Rule 56 governs. If "there is no genuine issue as to any material fact … the moving party is entitled to a judgment as a matter of law."[28] "When considering a motion for summary judgment, the evidence and the inferences drawn from the evidence are to be viewed in the light most favorable to the non-moving party."[29]    "The moving party bears the initial burden of demonstrating that even with the evidence construed in the light most favorable to the non-moving party there are no genuine issues of material fact."[30] "When the movant carries that burden, the burden shifts to the nonmoving party 'to present some specific, admissible evidence that there is a genuine issue of fact for a trial.'"[31]

---

[27] D.I. 41, 43, 44.

[28] Ct. Ch. R. 56(c).

[29] *Agiliance, Inc. v. Resolver SOAR, LLC*, 2019 WL 343668, at *2 (Del. Ch. Jan. 25, 2019).

[30] *In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 16 (Del. Ch. 2014); *see also Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992) ("[T]he court must view the evidence in the light most favorable to the non-moving party.").

[31] *Agiliance*, 2019 WL 343668, at *2 (quoting *Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *3 (Del. Ch. Dec. 29, 2009)).

"Where both sides put forth conflicting evidence such that there is an issue of material fact, summary judgment must be denied."[32]

## A.    Sources Of Indemnification

Brown claims indemnification from three separate sources.[33]  For purposes of this case, those three separate sources are guided by a single analysis.  Brown's first claimed source of indemnification is statutory.  Section 145(c) of the DGCL provides:

> To the extent that a present or former director or officer of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section, or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection therewith.

The second claimed source is Article VIII of Rite Aid's bylaws.  Section 3 of that Article contains nearly identical language as Section 145:

> To the extent … that a present or former director or officer of the Corporation has been successful on the merits or otherwise in defense

---

[32] *Deloitte*, 2009 WL 5200657, at *3.

[33] D.I. 38 at 5-6 (citing *Katzman v. Comprehensive Care Corp.*, C.A. No 5892-VCL (Del. Ch. Dec. 28, 2010) (TRANSCRIPT) ("The basic principle is that indemnification and advancement rights from one source are nonexclusive of other sources unless there is a specific agreement otherwise.  What that means is a statutory right under Section 145(c) is independent and nonexclusive of a charter right, which in turn is independent and nonexclusive of any bylaw right, which in turn is independent and nonexclusive of any contract right, absent specific agreement to the contrary.  That's provided by statute in Section 145(f)."); *Narayanan v. Sutherland Global Hldgs.*, 2016 WL 3682617, at *11 (Del. Ch. July 5, 2016) ("Section 145(f) makes clear that the indemnification and advancement rights under the DGCL are not exclusive of any additional indemnification and advancement rights a corporation chooses to provide through a separate instrument.")).

of any action, suit or proceeding described [in Sections 1 and 2 of Article VIII], or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection therewith, without the necessity of authorization in the specific case.[34]

This language is complemented by Section 7, which states it was the "policy of the Corporation that indemnification … shall be made to the fullest extent permitted by law."[35]

The same is true for Rite Aid's charter, the third source of indemnification. Section (B)(1) of Article Tenth of the charter states:

Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she or a person of whom he or she is the legal representative is or was a director or officer of the corporation or is or was serving at the request of the corporation as a director or officer of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action in an official capacity as a director or officer or in any other capacity while serving as a director or officer shall be indemnified and held harmless by the

---

[34] D.I. 24 Ex. 11 (the "Bylaws") art. VIII § 3.

[35] Bylaws art. VIII § 7; *see Zaman v. Amedeo Hldgs., Inc.*, 2008 WL 2168397, at \*16 (Del. Ch. May 23, 2008) (noting bylaws that provided indemnification "to the fullest extent permitted by applicable law" required reading bylaw "in light of" Section 145(c)); *see also Dore v. Sweports, Ltd.*, 2017 WL 415469, at \*18 (Del. Ch. Jan. 31, 2017) ("Section 145(c) only covers directors and officers. But when a corporation has provided other authorized individuals with mandatory indemnification to the fullest extent of the law, then that right extends the mandatory indemnification contemplated by Section 145(c) to those individuals.").

corporation to the fullest extent authorized by the General Corporation Law[.][36]

The charter does not as closely track the language of Section 145(c), but the substance is the same. It applies to individuals acting in certain capacities and where they are a party "in any action, suit, or proceeding … by reason of the fact that he or she … is or was a director or officer of the corporation."[37] And once again, the indemnification runs "to the fullest extent authorized by the" DGCL.[38]

The statute, charter, and bylaws present different paths to the same place: mandatory indemnification. The Section 145(c) framework provides "mandatory indemnification" in that "an officer or director who meets the requirements of the statutory provision has an absolute right to indemnification."[39] In short, a covered person defending himself in a covered proceeding[40] who succeeds "on the merits or otherwise" is entitled to indemnification.[41]

---

[36] D.I. 24 Ex. 10 (the "Charter") art. 10 § (B)(1).

[37] *Id.*

[38] *Id.*

[39] *Perconti v. Thornton Oil Corp.*, 2002 WL 982419, at *3 (Del. Ch. May 3, 2002); *see also Hermelin v. K-V Pharm. Co.*, 54 A.3d 1093, 1105 (Del. Ch. 2012) (describing mandatory nature of Section 145(c)).

[40] Unlike Sections 145(a) and (b), Section 145(c) does not include the "by reason of the fact that the person is or was a director, officer, employee or agent of the corporation …" language. But it incorporates the language by extending mandatory indemnification to "any action, suit or proceeding referred to in subsections (a) and (b) of this section."

[41] *See Cochran v. Stifel Fin. Corp.*, 2000 WL 1847676, at *9 (Del. Ch. Dec. 13, 2000) ("A party eligible for mandatory indemnification under § 145(c) must demonstrate two key

Though the rationale behind a mandatory requirement is clear, it is worth restating. "Rights to indemnification and advancement are deeply rooted in the public policy of Delaware corporate law in that they are viewed less as an individual benefit arising from a person's employment and more as a desirable mechanism to manage risk in return for greater corporate benefits."[42] "The invariant policy of Delaware legislation on indemnification is to promote the desirable end that corporate officials will resist what they consider unjustified suits and claims."[43] Section 145(c) does this by allowing "corporate officials to defend themselves in legal proceedings 'secure in the knowledge that, if vindicated, the corporation will bear the expense of litigation.'"[44] This achieves a "larger purpose" of encouraging "capable [individuals] to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve."[45]

---

elements: (1) that the matter at issue was covered by § 145(a) or (b); and (2) that the party was successful on the merits or otherwise."), *aff'd in part, rev'd in part,* 809 A.2d 555 (Del. 2002).

[42] *Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 509 (Del. 2005).

[43] *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561 (Del. 2002) (internal quotation marks and citation omitted).

[44] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. 2005) (quoting *VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 84 (Del. 1998)).

[45] *Stifel Fin. Corp.*, 809 A.2d at 561 (internal quotation marks and citation omitted).

### B. Count I: Mandatory Indemnification For Counts I-VIII Of The Cumberland County Action

Rite Aid asserted eight counts against Brown in the Cumberland County Action. For the reasons discussed below, Brown is entitled to mandatory indemnification for his defense of each count because he is a covered person, each count constituted a covered proceeding, and he succeeded in defending himself against all eight counts.

#### i. Counts I-VII

Rite Aid's post-argument submission conceded three points. First, that "Counts I-VII asserted claims arising from misconduct in Mr. Brown's former capacity as a Rite Aid director and executive."[46] Second, Rite Aid conceded that "Brown was successful with regard to Counts I-VII."[47] Third, Rite Aid explained it would no longer "argue he is not a 'covered person'" for purposes of Counts I-VII.[48]

---

[46] D.I. 43 at 2. Rite Aid had initially questioned "whether the acts at issue in the underlying actions were ones he took in his 'official capacity.'" D.I. 27 at 18; *see also id.* at 19 (arguing there was an "unresolved factual issue regarding whether he acted within his official capacity").

[47] D.I. 43 at 2.

[48] *Id.* In its answering brief Rite Aid argued there was a factual issue "[r]egarding [w]hether [Brown] [w]as an [o]fficer or [d]irector." D.I. 27 at 17. Even in conceding the point in its supplementary submission, Rite Aid noted it "found no evidence Mr. Brown formally was designated an 'Officer,' as that term is used in the DGCL and Rite Aid's Certificate and By-laws." D.I. 43 at 2. This contradicts Rite Aid's own assertions in the complaint it filed in Cumberland County and its Answer in this Action. *See, e.g.*, D.I. 40 ¶ 3 (admitting Brown was officer and director); D.I. 24 Ex. 3 ¶ 14 (alleging "[b]y virtue of his position as an officer and director of the Company, Brown owed the Company and its shareholders a fiduciary duty of undivided loyalty"); *id.* ¶ 29 ("The conduct of which Brown was charged

Still, Rite Aid argues Brown has no right to indemnification because he advanced "unsuccessful arguments in furtherance of a winning case."[49] From the initiation of the Cumberland County Action in 2002 through Brown's successful enforcement of the Bar Order in 2016, Brown raised several unsuccessful defenses. Brown even lost a motion for summary judgment on liability for some counts.[50] According to Rite Aid, Brown's intervening strategies in the Cumberland County Action failed, and he should only be indemnified for his successful arguments.[51] Rite Aid contends that Brown simply should have raised the Bar Order earlier, which would have avoided the expenses and fees incurred in pursuing other defenses.[52]

---

in the Indictment and convicted constituted a breach of his contractual obligations to Rite Aid as a Company officer and director. Such obligations are not documented in a written contract, but arise by virtue of Brown's service as a Company, employee, officer, and director.").

[49] D.I. 43 at 2.

[50] D.I. 43, Ex. D; D.I. 44 at 3.

[51] Rite Aid cites this Court's decision in *May v. Bigmar, Inc.* in support of its argument. But there the Court had already partially ruled for the plaintiff on summary judgment in the underlying action, giving rise to the problem "of partial indemnification." 838 A.2d 285, 290 (Del. Ch. 2003), *aff'd*, 854 A.2d 1158 (Del. 2004). There is no partial indemnification problem here. As Rite Aid conceded, Brown fully prevailed on Counts I through VII.

[52] The parties blame each other for the fact that the Cumberland County Court learned of the Bar Order more than a decade after Rite Aid sued. Rite Aid claims the expenses could not be reasonable because Brown should have raised it earlier to avoid unnecessary expenses. D.I. 43 at 3. Brown retorts that Rite Aid, against whom the Bar Order was issued, should not have violated the Bar Order by filing the case, let alone continued it for more than a decade. D.I. 44 at 4. Both sides have a point. But as explained below, mandatory indemnification focuses on success, and Brown was successful. Rite Aid

13

Rite Aid's arguments conflict with the language of Section 145(c) and precedent. The "on the merits or otherwise" language of Section 145(c) means an indemnitee is "indemnified as a matter of right" even "if he or she successfully asserts a 'technical' defense, such as a defense based upon a statute of limitations."[53] In "determining whether indemnification is mandatory under Section 145(c), this Court looks strictly at the outcome of the underlying action."[54] The indemnitee need not be "adjudged innocent in some ethical or moral sense."[55] "This approach is consistent with the language of the DGCL and avoids, where possible, prolonged and expensive discovery into the facts behind a particular dismissal, settlement, or plea."[56]

---

should not have sued Brown in violation of the Bar Order, and Rite Aid, not Brown, should bear the associated costs.

[53] *Meyers v. Quiz-DIA LLC (Meyers I)*, 2017 WL 2438328, at *7 (Del. Ch. June 6, 2017) (quoting 1 R. Franklin Balotti & Jesse A. Finkelstein, *The Delaware Law of Corporations and Business Organizations* § 4.12[B], at 4-64 (2014)).

[54] *Hermelin*, 54 A.3d at 1107; *see Stockman v. Heartland Indus. P'rs, L.P.*, 2009 WL 2096213, at *10 (Del. Ch. July 14, 2009) ("An indemnitee in a criminal proceeding is successful any time she avoids conviction: '[s]uccess is vindication [and] any result other than conviction must be considered success.'" (quoting *Merritt–Chapman & Scott Corp. v. Wolfson*, 321 A.2d 138, 141 (Del. Super. 1974))); *Waltuch v. Conticommodity Servs., Inc.*, 88 F.3d 87, 96 (2d Cir. 1996) ("'[S]uccess' under § 145(c), does not mean moral exoneration. Escape from an adverse judgment or other detriment, for whatever reason, is determinative.").

[55] *Zaman*, 2008 WL 2168397, at *22; *see also Perconti*, 2002 WL 982419, at *4 (stating Section 145(c) "does not require a determination that the corporate officer was 'innocent.'")

[56] *Hermelin*, 54 A.3d at 1107-08.

Brown has a right to be indemnified for the expenses he incurred in defending against Counts I through VII of the Cumberland County Action, regardless of his path to victory. Brown persuaded the Cumberland County Court to dismiss those Counts. That he obtained this result based on only one technical argument presented after years of litigation does not diminish his right to mandatory indemnification.

### ii. Count VIII

#### 1. Rite Aid Asserted Count VIII Against Brown "By Reason Of The Fact" That He Was A Rite Aid Officer.

In Count VIII, Rite Aid sought a declaration that, "[a]s a result of the conduct of which Brown has been convicted …, and for the other reasons averred herein, Brown is not entitled to any further payment from the Company."[57] The "conduct" and "other reasons" referenced in Rite Aid's complaint included Brown's alleged breaches of fiduciary duty and misuse of corporate powers:

- A summary of the criminal indictment against Brown, including that he had "defrauded Rite Aid and its Board of Directors."[58]

- That Brown "fraudulently concealed these criminal activities from Rite Aid and its Board of Directors" in an effort "to obstruct the Company's and the Government's investigations."[59]

---

[57] D.I. 24 Ex. 3 ¶ 40.

[58] *Id.* ¶ 4.

[59] *Id.* ¶ 5.

- That "[b]y virtue of his position as an officer and director of the Company, Brown owed the Company and its shareholders a fiduciary duty of undivided loyalty."[60]

- "The conduct of which Brown was charged in the Indictment and convicted constituted a breach of his contractual obligations to Rite Aid as a Company officer and director. Such obligations are not documented in a written contract, but arise by virtue of Brown's service as a Company, employee, officer, and director."[61]

- "Under the terms of Brown's purported deferred compensation agreement with the Company, Brown agreed that he would forfeit any benefits thereunder in the event he were convicted 'of a felony involving his personal dishonesty materially injurious to the Company.'"[62]

Thus, Count VIII seeks relief as a result of actions Brown took "as an officer," on the theory that those actions caused Brown to lose compensation he may have otherwise been entitled to. Brown was thus a party to Count VIII "by reason of the fact" of his corporate status.

Rite Aid argues the compensation at issue is otherwise owed to Brown in his "individual capacity, not in his former status as an officer or director."[63] This may be so, but it does not preclude indemnification here. It is true that some contractual claims asserted against a former officer or director are personal and are not

---

[60] *Id.* ¶ 14.

[61] *Id.* ¶ 29

[62] *Id.* ¶ 32.

[63] D.I. 43 at 5.

16

indemnifiable. In *Stifel Financial Corp. v. Cochran*, cited by Rite Aid, the Supreme Court affirmed a ruling that claims for breach of an employment contract were not indemnifiable.[64] But analyzing the Court of Chancery opinion shows how that case is different from Brown's. In *Stifel*, the individual allegedly breached his employment agreement in his personal capacity, by (1) failing to repay excessive compensation, (2) failing to repay the balance of an outstanding promissory note, (3) competing within one year of his termination, and (4) not arbitrating disputes arising out of the contract.[65] The breach of contract claims were "brought solely to enforce contractual commitments [the individual] made in his personal capacity," and "grounded wholly on [the] breach of his contractual duties."[66] The alleged breaches were not on the basis of actions taken in his "official capacity."[67]

Count VIII is different. Rite Aid claimed it was entitled to its requested relief – a declaration that it did not owe Brown any further payments – because of actions

---

[64] 809 A.2d at 562. Other decisions reflect this principle. *See Dore*, 2017 WL 415469, at *20 ("The plaintiffs pursued their Contract Claims to enforce their rights as creditors and guarantors. The enforcement of these rights did not implicate their duties to [the corporation]. The Contract Claims were purely personal claims that do not qualify for indemnification."); *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 403 (Del. Ch. 2009) (citing cases that "show that Section 145 will not apply when the parties are litigating a specific and personal contractual obligation that does not involve the exercise of judgment, discretion, or decision-making authority on behalf of the corporation.").

[65] *Cochran*, 2000 WL 1847676, at *3, *6.

[66] *Id*. at *4, *8.

[67] *Id*. at *7.

Brown took in his capacity as an officer or director, regardless of the fact that the payments were sourced in personal contracts.[68] Rite Aid did not allege any independent contractual breaches like those in *Stifel*. Accordingly, Brown was a party to Count VIII "by reason of the fact" of his corporate status.

### 2. Brown Succeeded In Defending Against Count VIII.

As explained above, the parties took a roundabout path to a final ruling on Count VIII. In the end, the Cumberland County Court did not grant Rite Aid's requested declarations. Brown thus succeeded and is entitled to indemnification.

Rite Aid sought two declarations. First, Rite Aid sought a declaration that it did not need to advance or indemnify any of Brown's criminal defense costs.[69] The Cumberland County Court never reached this issue because Brown requested, and that court entered, a stay so he could pursue his costs in Delaware. He did so, and he lost.[70] Brown contends he won the battle in Cumberland County; Rite Aid contends it won the war in Delaware.[71]

---

[68] D.I. 24 Ex. 3 ¶ 40.

[69] *Id.*

[70] *Brown v. Rite Aid Corp.*, No. 438, 2016 (Del. Feb. 23, 2017) (ORDER); *Brown v. Rite Aid Corp.*, C.A. No. 11596-VCL (Del. Ch. Aug. 24, 2016) (ORDER).

[71] *See May*, 838 A.2d at 291 (critically evaluating good faith estimates of costs in indemnification proceeding because party "'won the battle' of the November 16-18 meeting but 'lost the war'"). Rite Aid defeated Brown's affirmative claims through a laches defense. *Brown v. Rite Aid Corp.*, C.A. No. 11596-VCL (Del. Ch. Aug. 24, 2016) (ORDER).

Brown has the better argument.  Whether a party seeking indemnification was successful is determined claim by claim.[72]  The claim for which Brown seeks indemnification was brought in Cumberland County.  Rite Aid asks this Court to look beyond the Cumberland County claim, to Delaware.  But in "determining whether indemnification is mandatory under Section 145(c), this Court looks strictly at the outcome of the underlying action."[73]  Said differently, the Court "compare[s] the charges [the defendant] faced with the outcome he achieved, and [does] not look 'behind the result.'"[74]  Here, the underlying action was in Cumberland County, and Brown succeeded in avoiding an adverse judgment on Rite Aid's request *in that action*.[75]  Brown lost in the substituted Delaware action, but he still avoided the "personally negative result" Rite Aid sought against him in Cumberland County.[76]

---

[72] *Paolino*, 985 A.2d at 400 (describing "Delaware's overarching approach to Section 145, in which claims are evaluated individually or in appropriate groupings").

[73] *Hermelin*, 54 A.3d at 1107.

[74] *Id*. at 1110.

[75] *See Waltuch*, 88 F.3d at 96 ("'[S]uccess under § 145(c), does not mean moral exoneration.  Escape from an adverse judgment or other detriment, for whatever reason, is determinative.").

[76] *Hermelin*, 54 A.3d at 1111.  Appropriately, Brown is not seeking indemnification for fees incurred in his Delaware loss.  D.I. 24 at 14 n.4 ("Brown was unsuccessful on [his affirmative] claims … and is not seeking indemnification of fees and expenses incurred in the Cumberland County Action related to his unsuccessful claims to advancement in connection with the criminal actions.  Nor is Brown seeking indemnification or advancement for the fees and expenses he incurred in the Delaware Action or a pending action between Brown and Rite Aid in Dauphin County, Pennsylvania.").

Rite Aid's second set of requested declarations related to whether Brown's misdeeds excused Rite Aid from making contracted payments to Brown. The Cumberland County Court dismissed these claims for failing to join Brown's wife as an indispensable third party.[77] Rite Aid interprets this result as a conclusion that Brown "had no legal right to enforce the contracts," which was exactly "the remedy Rite Aid sought."[78] In other words, according to Rite Aid, Brown conceded he had no rights under the contract when he moved to dismiss for failure to join an indispensable party, such that Rite Aid actually prevailed on the issue of Brown's contractual rights. Even assuming Brown did cut off his nose to spite his face,[79] Rite Aid still did not obtain the declaration it sought in Cumberland County. Under the simple rubric for success, requiring indemnification if the indemnitee succeeds on either the merits or on a "technical" defense, Brown succeeded on this aspect of Count VIII.[80]

---

[77] *See supra* n. 20.

[78] D.I. 43 at 4-5.

[79] Neither party provided the Cumberland County briefing on the joinder issue, so I cannot discern Brown's position and its implications. Because Brown's wife has sued "seeking payment of benefits under the same agreement at issue in Count VIII of the Cumberland Action," D.I. 22 at 8 n.5; D.I. 40 ¶ 54, it seems likely the Browns believe they did not give up all of their rights under the contract.

[80] *Meyers I*, 2017 WL 2438328, at *7.

**C. Counts II (Indemnification For The EDPA Action) And III (Fees-On-Fees)**

In its supplemental submission, Rite Aid "waived defenses to the EDPA claim."[81] Brown confirmed Rite Aid paid his requested amounts.[82] The only dispute remaining is over the fees and expenses Brown incurred in pursuing indemnification for his successful action in the Eastern District.

"Plaintiffs who successfully enforce their indemnification rights in Delaware are entitled to fees-on-fees."[83] And Rite-Aid's charter and bylaws provide for fees-on-fees.[84] Brown has achieved full success as to his right to indemnification, and so will be entitled to fees-on-fees once the indemnified fees are finalized.[85]

---

[81] D.I. 43 at 1.

[82] D.I. 44 at 1.

[83] *Meyers v. Quiz-DIA LLC (Meyers II)*, 2018 WL 1363307, at *11 (Del. Ch. Mar. 16, 2018); *see also Stifel Fin. Corp.*, 809 A.2d at 561 ("Additionally, without an award of attorneys' fees for the indemnification suit itself, indemnification would be incomplete. There is no compelling reason to deprive claimants of full indemnification, in accordance with the policy of § 145.").

[84] Charter art. X § (B)(2) (providing that a "claimant may … bring suit against the corporation to recover the unpaid amount of the claim and, if successful in whole or in part, the claimant shall be entitled to be paid also the expense of prosecuting such claim"); Bylaws art. VIII § 5 (providing that, "[i]f successful, in whole or in part, the director or officer seeking indemnification shall also be entitled to be paid the expense of prosecuting such application").

[85] *Compare Meyers I*, 2017 WL 2438328, *9 ("This decision does not address the specific amount of indemnification to which [the indemnitees] are entitled. If the parties cannot agree on an amount, then [the indemnitees] shall make an application pursuant to Court of Chancery Rule 88.") *with Meyers II*, 2018 WL 1363307, at *11-12 (deciding fees-on-fees issue in later stage of case).

## III.    CONCLUSION

For the foregoing reasons, Brown's Motion for Partial Summary Judgment is GRANTED as to Counts I and II.  The parties should proceed in accordance with the scheduling order.[86]

**IT IS SO ORDERED.**

---

[86] Because Brown "is entitled to indemnification as a matter of law," Brown "shall file a Rule 88 affidavit itemizing the fees for which [he] seeks indemnification and a motion seeking entry of an Order requiring Defendant to indemnify [him] in the amount specified (the "Damages Motion")."  D.I. 16 ¶ 3.  The parties have already made progress on this front, *see supra* II.C, and I hope they can continue to make progress such that the Damages Motion can clearly define what fees are disputed.