# COURT OF CHANCERY
# OF THE
# STATE OF DELAWARE

PAUL A. FIORAVANTI, JR.
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: December 18, 2020
Date Decided: March 24, 2021

Samuel T. Hirzel, Esquire
Jamie L. Brown, Esquire
Heyman Enerio Gattuso & Hirzel LLP
100 S. West Street, Suite 400
Wilmington, DE 19801

Raymond J. DiCamillo, Esquire
Russell C. Silberglied, Esquire
Kevin M. Gallagher, Esquire
Angela Lam, Esquire
Richards, Layton & Finger, P.A.
920 North Market Street
Wilmington, DE 19801

RE:  *Gary Wunderlich v. B. Riley Financial, Inc. et al.,*
Civil Action No. 2020-0453-PAF

Dear Counsel:

In this action, Plaintiff Gary Wunderlich seeks indemnification from Defendants B. Riley Financial, Inc. ("B. Riley") and Wunderlich Securities, Inc., now known as B. Riley Wealth Management, Inc. ("WSI"). Wunderlich further seeks a declaratory judgment in his favor regarding his indemnification rights. Defendants have filed a Motion to Dismiss (the "Motion") Plaintiff's Complaint in its entirety. This letter opinion resolves the Motion.

## I.      Factual Background

### a.      Wunderlich and B. Riley

In 1996, Wunderlich founded non-party Wunderlich Investment Company, Inc. ("WIC"), a Delaware corporation, and WSI, a Tennessee corporation and WIC's operating subsidiary.[1]  Wunderlich was a director and officer of WIC and WSI.[2]

In 2017, B. Riley acquired WIC through a Merger Agreement (the "Merger Agreement"), dated May 17, 2017.  Through operation of the Merger Agreement, WIC and WSI became wholly-owned subsidiaries of B. Riley.[3]  After the merger closed on July 3, 2017, Wunderlich became a director and an officer of B. Riley and continued to serve as a director and officer of WIC and WSI.[4]  On the same date the merger closed, Wunderlich executed an Indemnification Agreement with B. Riley.[5]

In late July 2017, Dominick & Dickerman, LLC ("D&D") and Michael John Campbell (collectively, the "Claimants") initiated an arbitration proceeding in the Office of Dispute Resolution of the Financial Industry Regulatory Authority ("FINRA") against WSI and Wunderlich (the "Arbitration").   The Claimants

---

[1] The facts are drawn from the Complaint and the documents integral thereto.

[2] Compl. ¶¶ 9, 12.

[3] *Id.* ¶ 17.

[4] *Id.* ¶¶ 9, 12, 30; *id.* Ex. 3.

[5] Compl. ¶¶ 17, 19.

asserted claims for common law fraud, negligent misrepresentation, securities fraud, breach of contract, and violations of FINRA rules in connection with WSI's 2015 acquisition of D&D.[6] Wunderlich was named as a respondent in the Arbitration proceeding by reason of the fact that he was a director and officer of WIC. The Defendants "assumed all control and responsibility for the defense of the Arbitration Proceeding from its outset, including the selection and payment of counsel" and the payment of legal fees and expenses incurred in the defense of the Arbitration Proceeding.[7]

During the pendency of the Arbitration, B. Riley and Wunderlich agreed to part ways. The terms of their separation are memorialized in a November 4, 2018 severance agreement (the "Severance Agreement"). Pursuant to the Severance Agreement, Wunderlich's employment with B. Riley terminated, and he resigned from all positions he held at B. Riley and its subsidiaries, which included his director and officer positions at B. Riley, WSI, and WIC.[8]

The Arbitration culminated in an Award against WSI and Wunderlich and in favor of Claimants on April 7, 2020. The Award held WSI and Wunderlich jointly

---

[6] *Id.* ¶¶ 23, 24; Pl.'s Answering Br. 12.

[7] Compl. ¶ 27.

[8] *Id.* ¶¶ 9, 12, 30; *see id.* Ex. 2 § 13.

and severally liable for approximately $10.5 million.[9]  In May 2020, Claimants filed a petition to confirm the Award in the United States District Court for the Southern District of New York (the "Confirmation Action").  The following day, B. Riley filed a petition to vacate the Award in the same court on behalf of itself and Wunderlich (the "Vacatur Action").[10]

On April 23, 2020, Wunderlich formally demanded that B. Riley "confirm" that it would indemnify him for "all costs, expenses, awards, losses and liabilities incurred by reason of the fact that he was an officer or director" of B. Riley, WIC, and WSI, including defense costs for the Arbitration and payment of the Award.[11]

On June 3, 2020, the Claimants, WSI, and Wunderlich executed a settlement agreement resolving all claims asserted in the Arbitration.[12]  Through the Settlement Agreement, Defendants agreed to pay an amount to resolve all claims against

---

[9] Compl. ¶ 35.

[10] *Id.* ¶ 37.

[11] *Id.* ¶ 40; *id*. Ex. 7, final page.

[12] *See* Compl. ¶ 38 ("Rather than litigating the competing claims in the New York Actions, the parties reached a confidential settlement agreement . . . executed on or about June 3, 2020, wherein Defendants agreed to pay an amount to resolve all claims against Defendants and Mr. Wunderlich (and extinguishing all liability on the Award) in exchange for releases of all Claimants' known and unknown claims against Defendants and Mr. Wunderlich."); *id.* ¶ 38 n.1 ("The Settlement Agreement's terms do not permit disclosure of its terms."). Plaintiff's answering brief appears to clarify that the settlement agreement was "between the Claimants, [WSI], and Mr. Wunderlich."  Pl.'s Answering Br. 17.

Defendants and Wunderlich in exchange for releases of Claimants' claims against Defendants and Wunderlich. During settlement negotiations, however, Defendants threatened to pursue claims against Wunderlich for actions relating to the Arbitration and to recover from Wunderlich amounts Defendants paid in the Settlement Agreement.[13]

On June 10, 2020, Wunderlich initiated this action seeking indemnification against Defendants.

### b. The Claimed Sources of Indemnification

Wunderlich points to several sources for his rights to indemnification.

### i. The WIC Bylaws and the WSI Bylaws

Wunderlich contends that he is entitled to indemnification under the bylaws of WIC and WSI. Article VII of the WIC Bylaws contains broad indemnification rights for current and former directors and officers of WIC. It states that WIC shall "indemnify, to the fullest extent permitted by the Delaware General Corporation Law . . . any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed action . . . by reason of the fact that such person . . . is or was a director or officer of the corporation . . . or is or was a director or

---

[13] Compl. ¶ 39.

officer of the corporation serving at the request of the corporation as a director or officer, employee, or agent of another corporation."[14]  Section 10 of Article VII further states that "[t]he rights to indemnification and advancement of expenses conferred by this Article VII shall continue as to a person who has ceased to be a director or officer."[15]

Article VI of the WSI Bylaws is similar and states that WSI shall "to the fullest extent permitted by applicable law . . . indemnify any and all persons" who have served as WSI's directors or officers.[16]  The WSI Bylaws also state that the "indemnification shall continue as to a person who has ceased to be a [d]irector or officer" and that the indemnification provided by the WSI Bylaws "shall not be deemed exclusive of any other" indemnification rights.[17]

### ii.     The Merger Agreement

Wunderlich argues that he is entitled to indemnification as a third-party beneficiary of the Merger Agreement, because it  "expressly affirmed, assumed and continued" the indemnification and advancement obligations of WIC and WSI.[18]

---

[14] *Id.* Ex. 5, Art. VII § 1.

[15] *Id.* § 10.

[16] Compl. Ex. 4, Art. VI.

[17] *Id*.

[18] Compl. ¶¶ 2, 18.

Wunderlich specifically relies upon Section 5(r)(i) of the Merger Agreement, which states that "all rights to indemnification, advancement of expenses and exculpation by [WIC] now existing in favor of each Person who is now, or has been . . . an officer or director of [WIC] . . . shall survive the Merger Closing Date and shall continue in full force and effect for the six year period following the Merger Closing Date."[19] Section 5(r)(ii) further provides that B. Riley's and WIC's indemnification obligations "shall not be terminated or modified in such a manner as to adversely affect any director or officer to whom this [section] applies without the consent of such affected directed or officer."[20]

### iii.     The Indemnification Agreement

Wunderlich argues that, in addition to his indemnification rights under the WIC and WSI Bylaws, he possesses indemnification rights against B. Riley pursuant to the Indemnification Agreement. Section 2 of the Indemnification Agreement provides Wunderlich the right to indemnification if he is "involved . . . in any Proceeding by reason of . . . an Indemnifiable Event, whether the basis of the Proceeding is the Indemnitee's alleged action in an official capacity as a director or

---

[19] Compl. Ex. 3 § 5(r)(i).

[20] *Id*. § 5(r)(ii).

officer or in any other capacity while serving as a director or officer."[21]  Under the Indemnification Agreement, Wunderlich is entitled to indemnification "to the fullest extent permitted by the DGCL against any and all Expenses, liability, and loss," including "any amounts paid or to be paid in settlement" for amounts "reasonably incurred or suffered by [Wunderlich] . . . in connection with such Proceeding."[22]

"Proceeding" and "Indemnifiable Event" are defined terms.  The Indemnification Agreement defines "Proceeding" as "any threatened, pending or completed action, suit, investigation or proceeding, and any appeal thereof . . . whether conducted by [B. Riley] or any other party, that [Wunderlich] in good faith believes might lead to the institution of any such action."[23]  "Indemnifiable Event" is defined as "any event or occurrence that takes place either prior to or after the execution of this Agreement, related to the fact that the Indemnitee is or was a director or officer of [B. Riley], or is or was serving at the request of [B. Riley] as a director, officer, employee, or agent of another corporation[.]"[24]  The Indemnification Agreement further provides that the rights provided to Wunderlich

---

[21] Compl. Ex. 1 ¶ 2.

[22] *Id.*

[23] *Id.* ¶ 1(e).

[24] *Id.* ¶ 1(d).

under that agreement are not exclusive of any other statute, certificate of incorporation, or bylaws.[25]

## II.     Analysis

Wunderlich's Complaint contains four counts. Count I is an indemnification claim for "reasonable attorneys' fees and other expenses incurred in connection with defending against and pursuing vacatur of the Award and negotiating the terms of the Settlement Agreement resolving the amounts owed under the Award," with interest. Compl. ¶ 48. Count II seeks indemnification for Wunderlich's fees and expenses incurred in this action, or "fees-on-fees." *Id.* ¶¶ 49–51. Count III requests a declaratory judgment obligating Defendants to indemnify Wunderlich for any contribution claim that Defendants "may seek to assert against him in connection with the Arbitration Proceeding, the Award, the Settlement Agreement (or amounts paid in connection therewith)." *Id.* ¶ 57. Count IV alleges that B. Riley's failure to tender payment in response to Wunderlich's indemnification demand breached the Indemnification Agreement. *Id.* ¶¶ 58–64.

Defendants have moved to dismiss the Complaint in its entirety pursuant to Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can

---

[25] *Id.* ¶ 8.

be granted. Defendants have moved to dismiss Count III for the additional reason that it does not present a ripe dispute.

This letter opinion first addresses Defendants' ripeness argument before addressing whether the Complaint states claims for indemnification.

### a. The Declaratory Judgment Claim Is Not Ripe.

Count III seeks a declaratory judgment that Defendants must indemnify Wunderlich for any award of contribution that they may seek against him in connection with the Arbitration Proceeding, the Award, and the Settlement Agreement. Defendants contend this claim is not ripe because Defendants have not initiated any contribution action against Wunderlich.

This Court may decline to exercise jurisdiction over a case if the underlying dispute is not ripe. To determine whether Count III presents a ripe claim, the court must engage in a "common sense assessment of whether the interests of the party seeking immediate relief outweigh the concerns of the court in postponing review until the question arises in some more concrete and final form." *XL Specialty Ins. Co. v. WMI Liquidating Trust*, 93 A.3d 1208, 1217 (Del. 2014) (internal citations omitted). As the Delaware Supreme Court elaborated:

> Generally, a dispute will be deemed ripe if litigation sooner or later appears to be unavoidable and where the material facts are static. Conversely, a dispute will be deemed not ripe where the claim is based

> on uncertain and contingent events that may not occur, or where future events may obviate the need for judicial intervention.

*Id.* at 1217–18 (internal citations omitted). The Delaware Supreme has emphasized that "our courts will decline 'to enter a declaratory judgment with respect to indemnity until there is a judgment against the party seeking it.'" *Id.* at 1218 (quoting *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 572 A.2d 611, 632 (Del. Ch. 2005)).

Count III does not present a ripe claim because "future events may obviate the need for judicial intervention." *XL Specialty*, 93 A.3d at 1218. Defendants have not asserted a contribution action against Wunderlich, and Wunderlich does not presently owe any amounts to be paid in connection with the Settlement Agreement. If Defendants do not assert a contribution claim against Wunderlich, judicial intervention may be unnecessary. Further, the material facts are not static. The nature of the claim and the amount sought for contribution against Wunderlich remain uncertain. In this regard, Defendants have represented that they are presently seeking payment from an insurer for the amounts paid under the Settlement

Agreement, which could offset or, according to Defendants, potentially eliminate the possibility of any contribution litigation against Wunderlich.[26]

Wunderlich argues that Count III is ripe because he "has an interest in promptly resolving this controversy" and because the Complaint "alleges that B. Riley requested voluntary contributions from [him], repeatedly reserved its rights to sue him for contribution, recently threatened to do the same, and has withheld presently due indemnification funds."[27] At oral argument, Wunderlich's counsel further insisted that the "[t]he possibility of future fact development is, frankly, over" and that "judicial economy favors proceeding" with Count III at the same time as the other Counts in the Complaint.[28]

These arguments are not persuasive. Wunderlich has not cited any case in which this court has determined that a declaratory judgment claim for

---

[26] After the completion of briefing and oral argument, Plaintiff and Defendants each submitted letters regarding the extent to which the action seeking payment from an insurer for the Settlement Agreement could offset or eliminate Wunderlich's potential liability to Defendants. *See* Dkts. 27 & 29. The precise terms of the Settlement Agreement are not available to the court because the parties have not provided that information. It is therefore not possible for the court to determine how much Plaintiff could be liable for contribution in the event that Defendants prevail against the insurer. Based on the record before the court, however, the possibility of recovery from the insurer remains a material factor in any potential subsequent contribution action and accordingly, this factor weighs in favor of dismissal without prejudice.

[27] Pl.'s Answering Br. 24.

[28] Oral Arg. Tr. 31:5–11.

indemnification arising from an unasserted claim was ripe. The assertion that "the possibility of future fact development is . . . over" is contrary to the record before the court. As described above, future developments in the insurance action and the initiation of any contribution litigation by Defendants against Wunderlich would be material to this action. Wunderlich's interest in clarifying his legal rights is understandable, but he is not currently liable to any party for any portion of the Award because Defendants have paid the amounts owed in the Settlement Agreement. In the absence of any contribution action, Wunderlich is not liable for any amount under the Settlement Agreement.[29]

For the foregoing reasons, Count III of the Complaint is dismissed without prejudice to Wunderlich's ability to reassert the claim in the event that Defendants seek to pursue a contribution claim against him.

---

[29] Wunderlich argues that he is presently owed indemnification for "expenses incurred in connection with the Vacatur Action and negotiating the Settlement Agreement." Pl.'s Answering Br. 28. As Wunderlich acknowledges, these expenses "are presently before this Court in Count I," *id.*, and they are not the subject of Count III, which relates exclusively to an anticipated claim for contribution. *See* Compl. ¶ 57.

**b.    The Complaint States a Claim for Indemnification.**

Defendants argue that Plaintiff has not stated a claim for indemnification or

for breach of the Indemnification Agreement in Counts I and IV of the Complaint.

In resolving a motion to dismiss for failure to state a claim:

> all well-pleaded factual allegations are accepted as true; (ii) even vague
> allegations are well-pleaded if they give the opposing party notice of
> the claim; (iii) the Court must draw all reasonable inferences in favor
> of the non-moving party; and ([iv]) dismissal is inappropriate unless the
> plaintiff would not be entitled to recover under any reasonably
> conceivable set of circumstances susceptible to proof.

*Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (internal citations and

quotation marks omitted); *accord Central Mortg. Co. v. Morgan Stanley Mortg.*

*Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

Defendants do not dispute the broad scope of the indemnification provisions

in the WSI and WIC bylaws.  Instead, Defendants principally argue that Wunderlich

waived his indemnity rights when he executed the Severance Agreement.  Central

to this decision is whether the indemnification provisions in the bylaws are preserved

through a carve-out in the Severance Agreement, which, in turn, requires the

construction of the terms of the Merger Agreement.  Defendants also contend that

the Indemnification Agreement does not apply to events occurring before its

execution.   All of these issues require application of well-settled principles of

contract construction.[30]

"'Delaware adheres to the objective theory of contracts, i.e., a contract's

construction should be that which would be understood by an objective, reasonable

third party.'" *Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (quoting *NBC

Universal v. Paxson Commc'ns Corp.*, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29,

2005)); *accord Salamone v. Gorman*, 106 A.3d 354, 367-68 (Del. 2014). When a

contract's language is clear and unambiguous, the Court will give effect to the plain

meaning of the contract's terms and provisions. *Osborn*, 991 A.2d at 1159-60. The

contract is to be read as a whole, giving effect to each term and provision, so as not

to render any part of the contract mere surplusage.  *Id.* at 1159.  "At the motion to

---

[30] The Indemnification Agreement and the WIC Bylaws are governed by Delaware law. The Merger Agreement and Severance Agreement are governed by New York law.  The parties have briefed and argued the Motion exclusively in reliance on Delaware law. Neither side has argued that New York law would differ from Delaware law regarding any legal issue implicated by the Motion.  *See Pine River Master Fund Ltd. v. Amur Fin. Co., Inc.*, 2017 WL 4548143, at *10 n.71 (Del. Ch. Oct. 12, 2017) (observing that "Delaware and New York apply the same general contract principles") (citing *Viking Pump, Inc. v. Century Indem. Co.*, 2 A.3d 76, 90 (Del. Ch. 2009)); *see also Standard General L.P. v. Charney*, 2017 WL 6498063, at *9–10 nn. 71 & 83 (Del. Ch. Dec. 19, 2017) (analyzing Delaware and New York law where the parties did not address the applicability of New York law, but observing: "This approach ends up being an academic exercise because no issue has been presented where the analysis and results would differ in any material respect under either state's law.").  The Merger Agreement contains a New York choice of forum provision (Compl. Ex. 3 § 10(i)), and the Severance Agreement provides for arbitration of disputes (Compl. Ex. 2 § 23), but the parties have not raised those provisions in the briefing.

dismiss stage, ambiguous contract provisions must be interpreted most favorably to the non-moving party. Thus, '[d]ismissal, pursuant to Rule 12(b)(6), is proper only if the defendants' interpretation[s] [are] the ***only*** reasonable construction[s] as a matter of law." *Veloric v. J.G. Wentworth, Inc.*, 2014 WL 4639217, at *8 (Del. Ch. Sept. 18, 2014) (emphasis in original) (quoting *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003)).

> The Severance Agreement contains a general release by Wunderlich stating:

> In consideration of the Severance Package, [Wunderlich] waives, releases and forever acquits and discharges [WIC] and its parent, past, present and future, including [B. Riley], and each of their affiliates . . . from any and all claims, known or unknown, which [Wunderlich] has ever had or which [Wunderlich] has now, including, but not limited to, any claims of . . . breach of contract, . . . or any other claims arising out of or relating to [Wunderlich's] employment, or the termination of [Wunderlich's] employment, with [WIC].[31]

> Wunderlich argues that he did not forfeit his indemnification rights because the Severance Agreement contains a carve-out that preserves his rights to indemnity that "aris[e] under" the Merger Agreement and the Indemnification Agreement:

> Excluded from the General Release are any of the Executive's rights to indemnity arising under the Merger Agreement by and among B. Riley Financial, Inc., Foxhound Merger Sub, Inc. Wunderlich Investment Company, Inc. and Stockholder Representative, dated as of May 17, 2017 and the rights of the Executive pursuant to the July 3, 2017 Indemnification Agreement. Also excluded from the General Release

---

[31] Compl. Ex. 2 § 2.

are Executive's rights arising under the Merger Agreement not specifically addressed herein.[32]

Defendants argue that the Severance Agreement extinguished Wunderlich's indemnification rights because those rights originate from the WIC Bylaws, not the Merger Agreement. Defendants argue that the only possible indemnification rights that "aris[e] under" the Merger Agreement are contained in Section 8 of the Merger Agreement. That provision enumerates the obligations of the purchaser and the sellers to indemnify each other for certain claims relating to the Merger Agreement, such as claims relating to breaches of representations and warranties in the Merger Agreement.[33] According to Defendants, Section 5(r) of the Merger Agreement only "acknowledged the existence of other preexisting indemnification rights owed by WIC."[34] At oral argument, Defendants took this argument a step further, insisting that Section 5(r) was a not a "new right," but an "abridgment of a right" because Wunderlich's indemnification rights were subject to a six-year tail.[35]

Wunderlich has stated a claim for indemnification in Count I of his Complaint because he has advanced a reasonable interpretation of the WIC Bylaws, the Merger

---

[32] *Id.*

[33] Compl. Ex. 3 § 8.

[34] Defs.' Opening Br. 20.

[35] Oral Arg. Tr. 14:15–23.

Agreement, and the Severance Agreement.[36]  The Severance Agreement does not merely preserve Wunderlich's indemnification rights contained in Section 8 of the Merger Agreement, but instead, maintains all indemnification rights arising under the Merger Agreement.

The WIC Bylaws provide Wunderlich with broad indemnification rights.  In Section 5(r)(i) of the Merger Agreement, B. Riley agreed that "all rights to indemnification" existing at the time of the Merger Agreement "as provided in the certificate of incorporation or by-laws of [WIC] . . . shall survive the Merger Closing Date and shall continue in full force and effect for the six year period following the Merger Closing Date."[37]   Section 5(r) of the Merger Agreement obligates Defendants to maintain Wunderlich's indemnification rights in the WIC Bylaws for at least a six-year period following the Merger Agreement.  By its terms, Section 5(r) imposes an obligation on B. Riley, and is not a mere "acknowledgment" or

---

[36] In his Answering Brief, Wunderlich argued that he is entitled to indemnification under WIC's Amended and Restated Certificate of Incorporation.  Pl.'s Answering Br. 8–9. Defendants argued that Wunderlich may not amend his complaint through briefing.  Defs.' Reply Br. 15–16.  Because the motion to dismiss the indemnification claim is denied, this Court need not address this issue.

[37] Compl. Ex. 3 § 5(r)(i).

"abridgment" of Wunderlich's indemnification rights, as Defendants argue.[38]  An objectively reasonable third-party could therefore conclude Wunderlich's rights to indemnification under the WIC Bylaws "aris[e] under" the Merger Agreement because B. Riley is obligated to maintain those rights under Section 5(r) of the Merger Agreement.

For this reason, *Julian v. Julian*, 2009 WL 2937121 (Del. Ch. Sept. 9, 2009) is inapposite.  Defendants rely on *Julian* for the proposition that the only rights that "arise under" a contract are those that exist within its four corners.  In *Julian*, the court evaluated an arbitration clause that required all claims "arising out of or relating to" a contract to be settled by arbitration.  *Id.* at *5.  The Court held that the phrase "relating to" extended the arbitration clause beyond the "four corners" of the contract.  *Julian* is factually inapposite because the relevant language in the Merger Agreement and the Severance Agreement are different from the arbitration provision at issue in *Julian*.  Here, the Merger Agreement can be reasonably interpreted to obligate B. Riley to provide Wunderlich indemnification rights.  *Julian* thus does

---

[38] *See id.* § 5(r)(ii) (referencing Section 5(r) as imposing "obligations" upon B. Riley and WIC); *id.* § 5(r)(iii) (requiring "proper provision" to be made for the assumption of the "obligations set forth in this Section 5(r)" in the event of a future merger or asset sale).

not mandate a conclusion that Wunderlich's indemnification rights do not "aris[e] under" the Merger Agreement.[39]

At this stage, Wunderlich has advanced a reasonable interpretation of the Severance Agreement, Merger Agreement, and WIC Bylaws entitling him to indemnification under the WIC Bylaws. Dismissal at this stage "'is proper only if the defendants' interpretation[s] [are] the only reasonable construction[s] as a matter of law.'" *Veloric*, 2014 WL 4639217, at *8 (quoting *VLIW Tech., LLC*, 840 A.2d at 615). The Court cannot determine as a matter of law that the Severance Agreement only released the indemnification rights listed in Section 8 of the Merger Agreement to the exclusion of any indemnification rights set forth at Section 5(r) in the same contract. Because Defendants have not advanced the only reasonable interpretation of the Merger Agreement and the Severance Agreement, their motion to dismiss Count I is denied.[40]

---

[39] Compl. Ex. 2 § 2.

[40] Because Plaintiff has presented a reasonable interpretation of the Severance Agreement and the Merger Agreement as preserving his indemnification rights under the WIC Bylaws, the court does not reach the issues of whether (1) the release is limited to rights as an employee and does not extend to rights as an officer or director, and (2) whether Plaintiff's claim for indemnification falls within the Severance Agreement's carveout for "any rights or claims that may arise after the effective date of [the] Agreement." Compl. Ex. 2 § 2; *see* Pl.'s Answering Br. 40–42.

Wunderlich has also stated a claim for breach of the Indemnification Agreement. Defendants argue that Wunderlich has not stated a claim for indemnification under the Indemnification Agreement because the event that caused the Arbitration was his conduct in 2014 and 2015, before B. Riley acquired WIC through the Merger Agreement.

Defendants' argument is a non-sequitur. Wunderlich alleges that "Defendants assumed all control and responsibility for the defense of the Arbitration Proceeding," Compl. ¶ 27, and it is a reasonable inference that his participation in the related Vacatur Action and settlement negotiations may have been an event "related to the fact that [Wunderlich] is or was a director of officer of [B. Riley]" or to the fact that he "[served] at the request of [B. Riley] as a director, officer, employee, or agent" of another entity. *See* Compl. Ex. 1 § 1(d) (defining "Indemnifiable Event"). Some of Wunderlich's costs relating to the Arbitration may not be indemnifiable. As Defendants concede, however, the Indemnification Agreement "covers . . . activities that were performed at the request of B. Riley Financial" or that were "related to service as an officer or director of B. Riley Financial." Defs.' Reply Br. 21–22. Because the Complaint pleads facts from which it can be reasonably inferred that Wunderlich participated in an Indemnifiable Event in his capacity as an officer or director of B. Riley, the motion to dismiss Count IV must be denied.

As a final matter, Defendants argue that Count II, Wunderlich's claim for fees-on-fees in enforcing his indemnification rights, should be dismissed because he has not identified any applicable indemnification provisions. Because Wunderlich has stated a claim for indemnification, including through the WIC Bylaws, the motion to dismiss Count II is denied. *See Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561 (Del. 2002) (analyzing Section 145 of the DGCL and noting that, "without an award of attorneys' fees for the indemnification suit itself, indemnification would be incomplete"); *see also* Compl. Ex. 5 Art. VII § 1 (requiring WIC to provide indemnification "to the fullest extent permitted by the Delaware General Corporation Law").

For the foregoing reasons, the motion to dismiss Count III as unripe is granted, and the motion to dismiss Counts I, II, and IV is denied.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Paul A. Fioravanti, Jr.*

Vice Chancellor